STATE OF MARYLAND, to Use of DOMBROSKA et al., v. WESTOLL et al.

(District Court, D. Maryland. November 14, 1899.)

1. MASTER AND SERVANT—SHIPPING—STEVEDORE—DEATH—CONTRIBUTORY NEGLIGENCE—LIBEL.

Libelant's decedent, a stevedore, went onto a hatch of a vessel to take out the middle fore and after beams preparatory to loading. He fastened winch chains to the middle fore and after, and ordered the winchman to proceed. The beam stuck, and decedent, without moving from his position on the adjoining hatch cover, ordered the winchman to put on more steam. The beam came out with a jump, and the fore and after beam supporting the hatch cover on which decedent was standing slipped, and precipitated the hatch cover, with decedent, to the bottom of the hold, killing him. *Held*, that decedent, in remaining on the hatch cover after seeing that the fore and after stuck, was guilty of such contributory negligence that his widow could not recover for his death.

2. SAME—NEGLIGENCE—PROXIMATE CAUSE.

That the beam had not been properly put in at the port of clearance did not render the shipowner liable, since the proximate cause of decedent's fall was, not that the beam was not properly put in, but that in taking the structure apart decedent stood in a place of danger, and applied an

extra strain of the steam winch, which was calculated to make the structure dangerous to stand on.

3. SAME—ADMIRALTY RULE.

The rule that a court of admiralty shall give or withhold damages on enlarged principles of justice and equity in an action for injuries, and is not bound to withhold damages where the party injured is himself in fault, does not authorize a judgment against a vessel for the death of a stevedore, who knowingly remained on a hatch after a beam supporting an adjoining hatch stuck while being taken out by a steam winch, and ordered additional steam applied to force out the beam.

In Admiralty.

Joseph W. Bristor and Charles F. Harley, for libelants.

Convers & Kirlin, George Whitelock, and George Whitefield Betts, Jr., for claimant.

MORRIS, District Judge.    This is a libel in personam filed by the widow and children of John Adam Dombroska against the owner of the steamship Gladys Royle for the pecuniary damages to the libelants resulting from the death of said John Adam Dombroska, who met his death by falling through a hatch of the steamship into the hold. The steamship came to the port of Baltimore light to receive cargo. The loading was put in charge of a firm of stevedores, Messrs. Steenken & Berkemeier, and they sent aboard a winchman and gang of stevedores, of whom Dombroska was one, in charge of a foreman. They went aboard the steamship in the morning, expecting to load a shipment of copper through the No. 2 hatch. They had taken off the hatch covers of at least the two after sections, and perhaps one or two covers of the forward section, when word came that the copper would not arrive until after dinner; and, rain having come on, they were ordered by the foreman of the stevedores to replace the hatch covers. About 1 o'clock the copper arrived, and the foreman of the stevedores ordered his men to remove the hatch covers of the two after sections of No. 2 hatch, and to take out the fore and after beams of those sections and the after crossbeam, intending to let down the copper through the two after sections, and to let the covers of the forward section remain on. Dombroska went on the forward section of the hatch, standing on the covers, and, reaching out, he placed the fall from the tackle around the middle fore and after of the middle section, and told the winchman to go ahead on the winch, but the fore and after stuck, and would not come out, and he called again to the winchman to put on more steam, and then the fore and after came out, jumping up, because of the strain, several feet into the air. The after end of the forward fore and after supporting the hatch covers on which Dombroska was standing in some way slipped from its bearing upon the crossbeam, and was let down some distance, and the hatch covers on which he was standing went all the way down, letting him fall to the bottom of the hold beneath, and he was picked up dead. The hatch had been opened in New York to discharge cargo there a few days before the accident, and was closed in New York for the voyage to Baltimore.

The contention on behalf of the libelants is that the forward crossbeam, which supported the forward end of the fore and after which

was being lifted out, and supported also the after end of the fore and
after upon which rested the hatch covers upon which Dombroska
was standing, was bent in the middle towards the stern of the ship,
and that the middle section fore and after had been forced into place,
thereby forcing the bent crossbeam more nearly straight, and that,
when the middle section fore and after was with difficulty pulled
out by the extra strain of the winch, the crossbeam sprang back
again, and left the end of the forward section fore and after with-
out support, and the end came down, and let the hatch covers fall.
The libelants' proof of the facts upon which this contention is based
is found in the testimony of the boss stevedore and his men, who
say that when, after the accident, they took the crossbeam out, they
marked the starboard end, and when, after the loading was finished
at the close of the same day, they put it back as they had found it,
the middle fore and after would not go in its place, being too long;
and a mate of the ship called to them that they had the crossbeam
in wrong, and must reverse it end for end, which they did, and then
they found all the fore and afters fitted properly.    There are two
questions to be determined:  First, did the shipowner fail in a duty
he owed to the stevedore Dombroska? and, second, was Dombroska
himself negligent, and does his negligence prevent a recovery by his
widow and children in this action?   The hatch was 18 feet long by
about 12 feet wide.   The wooden covers were in 24 sections, and
these were supported by fore and after beams, which were in three
sections, divided by two crossbeams.   There were side fore and aft-
ers which were not in use at the time of the accident, and the hatch
covers, being in pieces about six feet long, rested upon the hatch
coaming at one end and the center fore and afters at the other.
The crossbeams were of half-inch iron about two feet in depth, stiff-
ened by angle iron at top and bottom, and fitted into sockets in the
side of the coamings;  and the fore and after beams were of iron,
about six feet long, and about four inches square.   The ends of the
fore and afters were cut out so as to form lips at each end, which
had a bearing of about two inches on the crossbeams, or on the end
coamings.   Where the ends of the fore and afters came opposite each
other on the crossbeams they sank in a socket or slot in the cross-
beams, and the ends of these fore and afters touched.   All the sev-
eral parts making up the covering of the hatch and the supports for
the covering were marked, and each was fitted to go into its own
place, and was apt not to fit if put in any other place.   The libel-
ants' testimony shows in this case that, where the crossbeam was
put in as intended, the fore and afters went in without difficulty.
This they testify was demonstrated when they reversed the cross-
beam end for end.   This is a case, therefore, where the fittings of
the ship supplied by the owner were proper, and were kept in proper
repair; but where, in using them, they were not assembled together
as originally intended.   It may be conceded that if, by such neglect
or misuse by the servants of the owners, or under the direction of
those who represented him, the hatch covers did not bear the usual
weight to be expected of them, and a person lawfully standing on
them, without warning, fell through, then the owner would be lia-

ble. This case, however, presents other considerations. This was a large opening, the covers of which were sustained by a framework of heavy beams and rods made so as to be readily taken apart or assembled together, and necessarily constructed so that when all were fitted together every part helped to sustain and keep in place every other part. It was this structure which the stevedores were engaged in taking apart with the aid of the power of the steam winch. The testimony for the respondents in this case shows that there is always risk in a man standing upon one portion of such a structure when the other portions are being pulled out by a winch, and some contracting stevedores testify that they do not allow their men ever to do it if they see them. Undoubtedly it is done, but it is known to be attended with danger; and in a recent case of a quite similar accident I held upon the testimony then before me that it was negligence in a seaman to do this very same thing. The danger is so obvious that it scarcely needs explanation from persons having special knowledge.

It is a peculiarity of this case that there was a warning to Dombroska of a special danger in his remaining standing on the hatch covers. When the first pull of the steam winch failed to lift the fore and after, it was plain it was held by something, and it was to be supposed when he called for extra power sufficient to pull the beam out there would be a recoil. There were several things which would account for the fore and after not lifting. One would be that it was too long, and had been forced in between the two crossbeams on which it rested; another would be that it was too long, and the end bound against the end of the fore and after on which Dombroska was standing; another would be that the fall of the tackle was pulling on it in such direction that it was not being lifted up perpendicularly, but being pulled against the forward crossbeam. From any of these conditions it would result that if, by extra power, the fore and after was heaved up, the adjoining structure would be disturbed. If the fore and after resisted the pull because it was too long for that place, and had been forced down, then the crossbeam would spring out from the adjoining fore and after resting upon it; if it was because the end had caught against the end of the adjoining fore and after, then that fore and after would be lifted up out of place; and, if it was because the pull from the fall was not in the line in which it could be lifted, then some adjoining crossbeam was sure to be more or less disturbed, and the stability of the hatch covers endangered. These dangers are not the result of secret defects, but perfectly apparent when an extra strain is necessary to pull out any hatch beam which should come out without any more resistance than its own weight. This obvious danger should surely suggest to a man standing on the adjacent hatch cover over an opening 30 feet deep that he was assuming a great needless risk in remaining there. Granting that, although it is dangerous to stand on the hatch covers at any time when the fore and afters and crossbeams are being lifted out, stevedores and seamen do it because they are in the habit of taking such risks, and shipowners know they take the risk, and should, therefore, be the more careful to protect them, still I think

it clearly a different thing when the man sees right before him that the beam will not come out, and he himself calls for extra steam power to heave it out. If he stands then in the place of danger, he does so in spite of a clear warning; and when Dombroska saw that the fore and after, for some reason, was not coming out as it should, he had full opportunity to step back before calling for more steam, and, if he had done so, he would have been out of danger. He had the warning, and he had the opportunity to avoid the danger which his own order produced. The proximate cause of his fatal fall was not that the crossbeam was misplaced, and the fore and after forced into the socket, for that did not affect the safety of the structure, but the immediate cause was that in taking the structure apart he stood in a place of danger, and applied an extra strain of the steam winch, calculated to make the structure dangerous to stand on. It happened that none of the ship's officers or crew were present, and the whole matter was in the charge of the stevedores. In The Max Morris, 137 U. S. 1–13, 11 Sup. Ct. 29, 34 L. Ed. 586, the rule is approved that a court of admiralty shall give or withhold damages upon enlarged principles of justice and equity, and are not bound by the common-law rule which withholds damages entirely where the party injured is himself in fault. This rule, in its application, is to be controlled by rules of law, and not by sympathy.

It is urged on behalf of the libelants that the shipowners' duty was to afford Dombroska a safe place to do the work expected of him; that removing the hatch covers, crossbeams, and fore and afters was part of the work he was employed to do, and, if the structure was not safe for him to do that work, then it is contended the shipowner is liable for the resulting damages. But the structure, although the crossbeam was misplaced, was safe, except for the obvious danger of standing on the hatch covers while extra power was applied to pull out the fore and after beam. It seems to me that the shipowner did not fail in any duty he owed to Dombroska, but that the accident happened through Dombroska's own act. It does not appear to me, therefore, to be a case in which I can rightly impose any part of the damages upon the shipowner. Coming to this conclusion, I have not found it necessary to consider the contention of the proctors for the shipowner that, this being an action under the statute of Maryland for negligence resulting in death, commonly known as "Lord Campbell's Act," the ruling of the court of appeals of Maryland that there can be no recovery under the Maryland statute in case of contributory negligence applies in this court. It has been so held in admiralty under the New York statute, which is similar to the Maryland statute, in a decision by Judge Brown in The A. W. Thompson (D. C.; 1889) 39 Fed. 115, and, if this case required the question to be met, it might be proper to consider whether the rulings of the supreme court in The Max Morris (1890) 137 U. S. 1, 11 Sup. Ct. 29, 34 L. Ed. 586, and in The J. E. Rumbell (1893) 148 U. S. 1, 19, 20, 13 Sup. Ct. 498, 37 L. Ed. 345, do not require a re-examination of the question.

The owners of the ship by petition cited in Messrs. Steenken & Berkemeier upon the allegation that, if Dombroska's death resulted

from the negligence of any other than himself, it was the negligence of the stevedores who had contracted to load the ship. There is no testimony to charge Steenken & Berkemeier with liability. The libel is dismissed.