## THE A. W. THOMPSON.

### COLAHAN v. THE IDLEWILD.

*(District Court, S. D. New York.* June 5, 1889.)

**1. COLLISION—STEAM AND SAIL—TACKING.**
Where a steamer has shaped her course to keep out of the way of a sailing vessel on the wind, the latter is bound to beat out her tack.

**2. SAME.**
The steamer L., going west in Long Island sound, and rounding Throgg's point, saw the schooner A. W. T. beating west on her starboard tack towards the south-westward, and when within a half or three quarters of a mile of her shaped her course to pass astern of the schooner. The latter soon after tacked to the northward across the steamer's course, and collision ensued. There was nothing to prevent the schooner's continuing her former course at least a quarter of a mile further to the southward. *Held,* that the schooner was in fault for not beating out her tack, as in effect required by rule 24. The steamer was also in fault for not observing her tacking, and not keeping out of the way, as she might have done, notwithstanding the schooner's fault.

**3. SAME—DEATH BY WRONGFUL ACT—CONTRIBUTORY NEGLIGENCE.**
The captain was personally in charge of the navigation of the schooner, and was killed by the collision. In an action brought by his administratrix for loss of life under the statute of the state of New York authorizing suit where the deceased might have maintained an action if living, *held,* that whether or not a maritime cause of action, cognizable in an admiralty court, could be created by state legislation, this action would not lie, except under the conditions imposed by the statute; and inasmuch as by the state law contributory negligence would bar the action in the state courts, the libel for the captain's death could not be maintained in admiralty.

In Admiralty.
*Edwin G. Davis,* for libelant.
*Butler, Stillman & Hubbard,* and *Wm. Mynderse,* for claimants.

BROWN, J. On the 19th of March, 1887, as the libelant's schooner A. W. Thompson was beating to the westward in Long Island sound, against the wind from W. N. W., she was run into by the steam-boat Idlewild, also going west, about a mile this side of Throgg's Neck, off Whitestone docks, and about a half a mile from shore. The vessels met nearly at right angles. The master, who was at the wheel, was killed by the falling spars, and his body picked up from the water. The above

suits are brought by his administratrix to recover in one suit, under the statute of this state, for the loss of life, and in the other for the loss and damages to the vessel and cargo, on the ground that the collision was the fault of the Idlewild. The Idlewild was on her accustomed route, and there is no reason to suppose that she was materially off her course. This fixes with tolerable certainty the distance of the place of collision from shore, and both sides agree that it was abreast of Whitestone docks. As the steamer was going at the rate of about 15 knots with the tide, it could not have been more than from 4 to 5 minutes from the time when the schooner was first seen when the steamer was rounding Throgg's Neck, until the collision. When first seen she was sailing S. W. towards the Long Island shore on her starboard tack. After the Idlewild had got around Throgg's Neck, and headed westerly on her usual course, she had the schooner on her port hand, going southward, and further away from the line of the Idlewild's course. The situation was, therefore, one of absolute freedom from danger, as the steamer's course took her astern of the schooner. Thereafter the pilot's attention was for a short time diverted from the schooner, and the second pilot was engaged in making up the log; so that when their attention was next directed to the schooner, it was observed that she had come about upon her port tack, and was sailing to the northward directly across the steamer's course, about 500 feet distant, and about two points on the steamer's port bow. The steamer's engines were immediately reversed full speed, and her helm put hard a-starboard, to endeavor to go under her stern, but collision ensued. There was abundant water for the schooner for more than a quarter of a mile further to the southward. There were no other vessels in the way, and there were no circumstances that within rule 24 (new article 23) interfered with her continuing on her previous starboard tack. Her change to the port tack must have been made within less than three minutes of the collision, and within less than 300 yards of the steamer's course, and after the steamer's course was shaped so as to clear her. Such a change was a plain violation of the spirit of old rules 20 and 23, (new articles 17 and 22,) and of the unquestioned rule that requires sailing vessels in the near presence of other vessels bound to keep out of the way, to beat out their tacks, when there are no exigencies of navigation to prevent it. *The Empire State*, 1 Ben. 57, 61; *The W. C. Redfield*, 4 Ben. 227, 229; *The Clara Davidson*, 24 Fed. Rep. 763; *The Bridgeport*, 6 Blatchf. 3; *The R. R. Higgins*, 1 Low. 290; *The Isle of Pines*, 24 Fed. Rep. 498, affirmed on appeal. The Idlewild also must be held to blame for not maintaining a proper lookout. Had this been done the schooner would have been observed when she first tacked, and the steamer would have had no difficulty in keeping out of the way by going either to the northward or to the southward of her. This fact, however, does not free the schooner from blame. There were no other vessels that required watching. The steamer had a right to assume that the schooner would keep on her former starboard tack. There was no danger from her whatever so long as she preserved that course. The steamer was thereby misled as to the schooner's intentions. When the latter tacked, she adopted a maneuver

that was certain to result in collision, unless the steamer at once adopted new measures to avoid it. Both, therefore, were guilty of fault directly contributing to the collision,—the schooner in not beating out her tack, and thereby misleading the steamer; the steamer, for not maintaining a constant lookout, which the law and the policy of navigation require shall be rigidly enforced. For the damages to vessel and cargo the libelant is, therefore, entitled to half damages.

As respects the claim for the loss of life, I do not find it necessary to consider the question reserved in the cases of *The Harrisburg*, 119 U. S. 199, 7 Sup. Ct. Rep. 140, and *The Alaska*, 130 U. S. 201, 9 Sup. Ct. Rep. 461,—whether a libel *in rem* will lie for a loss of life through negligence under a statute like that of New York, which gives an action for damages not exceeding $5,000 and interest, to be recovered by the personal representatives, in a case like this, where the negligence and the death arose upon navigable waters within the limits of the state. Nor is it necessary to consider whether an act of negligence which by the maritime law of this country, as declared by the supreme court, constitutes no maritime tort as respects the libelant or any survivors of the deceased, can under the United States constitution be made a maritime tort cognizable in the admiralty by state legislation; or whether, if an action *in personam* were maintainable in the admiralty under such statutes, on the ground that the negligence was thereby made a maritime tort as respects the libelant, the remedy for such a tort in the courts of admiralty might not be *in rem* also, in accordance with the ordinary course of remedies under the maritime law of this country. *Holmes* v. *Railway Co.*, 5 Fed. Rep. 81; *The Garland*, Id. 924; *The Clatsop Chief*, 8 Fed. Rep. 163; *The E. B. Ward*, 17 Fed. Rep. 456; *The Manhasset*, 18 Fed. Rep. 920; *The Sylvan Glen*, 9 Fed. Rep. 335; *The Cephalonia*, 29 Fed. Rep. 334; *Butler* v. *Steam-Ship Co.*, 130 U S. ——, 9 Sup. Ct. Rep. 612, 619. The action rests entirely upon the state statute. Any defense, therefore, that would bar recovery in the state courts, with reference to which the statute must be deemed enacted, must be held equally good in the admiralty. Besides this, the very language of the New York statute contains the proviso that the wrongful act, neglect, or default shall be "such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof." Laws N. Y. 1847, p. 575, c. 450; 4 Edm. St. 526; 7 Edm. St. 591. As the action rests upon the statute it cannot lie except under the conditions which the statute imposes. *The Edith*, 94 U. S. 518. The well-settled law of this state at the time the statute was passed, and now, forbids a recovery of damages by a plaintiff chargeable with contributory negligence. In this case the master was at the wheel, and in command. He was personally chargeable with the negligence for which I have held the schooner liable. It therefore follows that the action for loss of life must be dismissed. Decrees may be taken accordingly.