### GRETSCHMANN v. FIX et al.

#### (District Court, W. D. New York. June 1, 1911.)

1. ADMIRALTY (§ 21*)—DEATH—STATE LAW.
    In proceedings in admiralty for causing death by negligence, the remedy is derived from the state statute giving the right of action to the next of kin.
    [Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 218; Dec. Dig. § 21.*]

2. ADMIRALTY (§ 31*)—DEATH—CONTRIBUTORY NEGLIGENCE.
    In a libel in admiralty for the death of a passenger, contributory negligence is a valid defense.
    [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 301–305; Dec. Dig. § 31.*]

3. SHIPPING (§ 166*)—WRONGFUL DEATH—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.
    In a libel in admiralty for the wrongful death of a passenger, libelant must affirmatively prove that the owners of the vessel were negligent, whereby their decedent was killed, and also that decedent was free from contributory negligence.
    [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 166.*]

4. SHIPPING (§ 166*)—DEATH OF PASSENGER—PROXIMATE CAUSE—CONTRIBUTORY NEGLIGENCE.
    A steamer left her dock with a barge in tow to which was attached a yawl made fast to the stern of the barge by a five-foot line. A deck hand remained seated in the yawl until the boat arrived at an island where he left the yawl and stood on the barge near the line. Subsequently he went forward on the barge to get water, and, while doing so, decedent, who was intoxicated, hauled the yawl to the stern of the barge and boarded her, without knowledge of the master. The deck hand, on returning, ordered decedent out of the yawl, and, in his attempt to do so, decedent slipped or

stumbled and was precipitated into the river. His companion, also in the yawl, grabbed him, but could not retain his hold, and, in spite of prompt efforts at a rescue, he was drowned. *Held*, that decedent's contributory negligence was the proximate cause of his death, and not the failure of the steamer to comply with Inspector's Rule 8, § 4, providing that every barge carrying passengers in tow, and engaged in excursions, shall be supplied with two yawl boats one of which must be manned and towed in such a manner as to best afford prompt relief in case of accident or disaster, and that the owners of the steamer were therefore not liable for decedent's death.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 551; Dec. Dig. § 166.*]

Libel in personam by Wilhelmina Gretschmann, as administratrix of the estate of Fred L. Gretschmann, deceased, against Frank F. Fix and another. Dismissed.

Farrington & Farrington, for libelant.
White & Stanley, for respondents.

HAZEL, District Judge. This is a proceeding in personam to recover damages for negligently causing the death of libelant's intestate. The proofs show that the decedent, Fred L. Gretschmann, was drowned on August 8, 1909, in consequence of his fall into Niagara river from a yawl boat made fast to the stern of the barge Lottie Koerber, which was lashed alongside and in tow of the steamer Henry Koerber, Jr. The barge and steamer, of which respondents are the owners, had on board a large number of excursionists bound on a pleasure outing, and the decedent, a youth, was of the party. The lifeboat was attached to the barge by a five-foot line, and at the time the vessels started on the trip she was manned by a deckhand named Finn, who remained seated in her until the arrival at Grand Island, where he left his position on account of the heat of the sun and stood on the barge near the line of the yawl boat. Subsequently he went forward on the barge to get a drink of water, and, while doing so, the decedent voluntarily hauled the lifeboat to the stern of the barge and boarded her. Another excursionist had preceded him and taken a seat in the lifeboat. The steamer was proceeding at the rate of eight miles an hour. Neither the entry of the men into the lifeboat nor their presence therein was known to the master of the steamer. Immediately upon the return of the deckhand Finn, who had been absent four or five minutes, he and several members of the excursion party called to the men to come out of the lifeboat, and in his attempt to do so the decedent slipped or stumbled and was precipitated into the river. His associate in the lifeboat quickly grasped him, but was unable to retain his hold, and the decedent, in spite of prompt efforts to effect a rescue, was carried away by the current in the river and was drowned. The decedent was intoxicated. There were no defects in the construction of the lifeboat or the oarlocks, or the manner in which such boat was fastened to the stern of the barge.

The libelant predicates liability upon the owners of the barge and steamer on the ground principally that the vessels failed to comply with the provisions of section 4, rule 8, of the rules and regulations

of the Board of Supervising Inspectors, which, omitting immaterial parts, reads as follows:

"Every barge * * * carrying passengers in tow and engaged in excursions shall be supplied with two yawl boats, * * * one of which boats must be manned and towed in such manner as to best afford prompt relief in case of accident or disaster."

[1, 2] In proceedings in admiralty for causing death by negligence the remedy is derived from the state statute which gives the right of action to the next of kin, and concededly the common-law doctrine of contributory negligence has application to the facts under consideration.

[3] Hence it must be affirmatively shown that the respondents, owners of the vessels, were negligent as a result of which the injury was sustained, and, furthermore, that the decedent was free from contributory negligence. Robinson v. Detroit & C. Navigation Co., 73 Fed. 883, 20 C. C. A. 86; The A. W. Thompson (D. C.) 39 Fed. 115; The City of Norwalk (D. C.) 55 Fed. 98.

[4] Giving force and effect to this rule it is difficult to perceive how the libelant may be permitted to recover herein. It is impossible to say that the decedent would not have entered the lifeboat if it had been properly manned. It is idle to indulge in any speculation as to what would have occurred if the deckhand Finn had remained on the life boat or if the decedent's associate had not first taken a seat therein. It is thought impossible to determine that the fatality was due to any other cause than the voluntary and obviously negligent act of the decedent in placing himself in the lifeboat—a dangerous place. He clearly had no right or license to enter it even though it was unattended. His stumbling or slipping while in the act of leaving the boat, as a result of which he fell into the river, was the consequence of his initial negligent act. The asserted negligence of the respondents in failing to have a man in the lifeboat at the precise time the decedent boarded her was not the direct cause of the drowning. The absence from his post of the man appointed to man the yawl boat was not the approximate cause of the regrettable occurrence. His absence was not an invitation to the decedent to draw the boat to the stern of the barge and seat himself in her, as she obviously was not provided for such use. Neither the master of the steamer nor any one in charge of the barge had warning of the decedent's intentions, and they could not be expected to have anticipated them. The Supervising Inspectors' rule was not designed to prevent passengers from negligently entering the yawl boat; its primary purpose is to assist in relieving or rescuing passengers who might fall overboard and to give relief in case of other accident or danger to those on board. It is quite true that in the exercise of proper precaution the lifeboat should have been hauled alongside the barge to have permitted the decedent to alight, but the evidence does not show that the master knew of the intoxicated condition of the decedent, or knew of his presence in the life boat, or of the temporary absence of the man charged with the duty of manning her. Upon the return of Finn to the stern of the barge, members of the committee in charge of the excursion, and who had nothing to do

with the navigation of the vessels, were directing and urging the decedent and his associate to leave the yawl boat, and it was upon compliance to such requests that the casualty occurred. The master of the steamer promptly reversed the steamer's engines and as quickly as possible brought the lifeboat into service. The suddenness of the accident may well have disconcerted those in charge of the steamer and barge, and allowance must be made for any delay or errors in judgment which are apt to occur in such a situation. The law does not require the same calmness, self-possession or control when immediate danger confronts us as is expected when the occasion is more normal. Lowery v. Manhattan Railway Co., 99 N. Y. 158, 1 N. E. 608, 52 Am. Rep. 12. It is quite believable that if the man whose duty it was to remain in the lifeboat had remained there he would not have permitted the decedent to come aboard, but, in view of the facts showing that the direct cause of the accident was attributable to the deceased, any such omission is wholly insufficient to charge the respondents with liability. If the negligence of the decedent had had nothing to do with the subsequent mishap a question similar to that in Haley v. Earle, 30 N. Y. 208 would be presented for decision. As it is, I feel bound to hold that the respondents were not negligent.

The libel is dismissed.