Richard Kennedy, Appellant, *v.* The Cunard Steamship Company, Limited, Respondent.

First Department, July 1, 1921.

Ships and shipping — action to recover for injury to longshoreman as result of fall through hatchway aboard ship while employed as stevedore — master liable for failure to take reasonable precautions — foreman not fellow-servant — contributory negligence question for jury — no assumption of risk by plaintiff — Workmen's Compensation Law inapplicable, remedy being at common law — maritime law as to contributory negligence, fellow-servant doctrine and measure of damages applicable.

In an action by a longshoreman, employed in stowing a cargo upon a vessel in navigable waters, to recover damages for injuries suffered by reason of a fall through an open hatchway, it appeared that in obedience to the foreman's orders, the plaintiff left the lower hold, where he had been employed all day, and came through the open hatchway to the orlop deck above where he had been directed to leave his coat; that the other men in the gang passed to the deck above just ahead of the plaintiff and proceeded to close down the hatches as they had been directed by the foreman; that as plaintiff turned toward a bulkhead door, the hatchway was suddenly closed without warning, leaving him to grope in the darkness for another exit; that after shouting to the men above and receiving no answer he proceeded to the bulkhead door cautiously, mindful of the open hatchway, and while carefully feeling his way in the darkness he suddenly fell and suffered injuries.

*Held,* on all the evidence, that the plaintiff made a *prima facie* case and the master was liable.

A duty devolved upon the master to take reasonable precautions to see that all the men had come up and not to close the hatches until all had had a reasonable opportunity to reach the upper deck. The master could perform that duty through another; but it was the master's duty that the other was performing and for a failure to discharge it the master was liable.

Whether the plaintiff was chargeable with contributory negligence was clearly a question of fact for the jury.

The risks which a servant assumes are either such as are incident to his employment, after the master has discharged his duty of reasonable care to prevent them, or such as are quite as open and obvious to the servant as to the master.

The plaintiff was not employed to work in the ship in the darkness, and it cannot be said he assumed the risk of falling into the hatch, when all light had been cut off by the master's negligent act.

*It seems*, that the plaintiff is not entitled to compensation under the Workmen's Compensation Law, but his remedy is at common law in the courts of this State under the rules of those courts. But the rules relating to contributory negligence, acts of fellow-servants and the measure of recovery must be determined by the maritime law.

APPEAL by the plaintiff, Richard Kennedy, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 21st day of May, 1920, upon the dismissal of the complaint by direction of the court at the close of the case.

*Robert Stewart*, for the appellant.

*Thaddeus G. Cowell* of counsel [*Lord, Day & Lord*, attorneys], for the respondent.

PAGE, J.:

Plaintiff was a longshoreman, and on September 23, 1916, was working for the defendant in loading the cargo on board the steamship *Andania*, then lying in the North river. He was working in the lower hold, below the orlop deck, at No. 3 hatch. This hatch and those directly above it on the upper decks were all of the same size, and formed the opening into compartment No. 3 of the ship. This compartment was divided from compartment No. 4 by a water-tight bulkhead extending clear across the ship on the orlop deck, and just aft of the hatch, leaving a space of only two or three feet between the bulkhead and the hatch. This bulkhead had in it a door opening from No. 4 to No. 3 compartment on the right-hand side of the hatch looking forward. The hatch was flush with the deck and had no coaming or guard around it. To go from his work in the lower hold to the dock it was necessary for the plaintiff to pass forward in the lower hold, across the hatch opening, to a ladder which extended up from the lower hold to the orlop deck through a small manhole, and on reaching the orlop deck to pass this open hatch to the bulkhead door, and enter compartment No. 4, and from there pass up the gangways until the upper deck was reached, and thence to the dock.

Plaintiff had worked all day in this lower hold, all the hatches being open clear to the upper deck, and the men

working by the daylight coming through these hatches. At five o'clock the foreman called out for the men below on the various decks to come up and put on their hatches. When plaintiff and his fellow-workmen went to work, they were told to leave their garments on the orlop deck. Plaintiff left his coat on the left side of the ship a little forward of the hatch on that deck. He was the last man of the gang to quit work on that day. The other men passed up to the decks above, and the first man up began to put the hatch covers on the hatch of the upper deck, this being the only one on which the covers were placed. These covers were in sections. At the time the plaintiff went up the ladder to the orlop deck these hatch covers were partly on, but there was sufficient light for him to see his coat. He walked over to the left-hand side and picked up his coat. As he turned to go to the bulkhead door, the hatch was suddenly closed, shutting out all light from the deck the plaintiff was on. Nothing was done to ascertain whether the men were all out, or any warning given before this was done. Plaintiff shouted to the men above. Getting no answer and realizing that the men were leaving the ship for the night, he then endeavored to make his way to the bulkhead door. He knew that he would have to pass the open hatch, so he proceeded cautiously, shuffling one foot ahead of the other carefully feeling his way in the darkness, trying to prevent himself from stepping into the open hatch. He suddenly fell into it and received injuries for which the action was brought.

At the close of the plaintiff's case the defendant's counsel moved to dismiss on the ground that the plaintiff had failed to prove facts sufficient to constitute a cause of action, also on the ground that the evidence proved contributory negligence, and that the plaintiff assumed the risk and that if there was any negligence it was the negligence of a fellow-servant for which the master was not responsible. The court granted the motion. In this he erred.

The danger of injury to a man, left in utter darkness in the ship with its open hatchway, was obvious. It was a duty that the master owed to the employees, to take reasonable precautions to see that all the men had come up from the hold and not to close down the hatches until all the men had

a reasonable opportunity to reach the upper deck. This was a duty that the master could discharge through another; but it was the master's duty that the other was performing, and for a failure to discharge it the master was liable. (*Corcoran* v. *Holbrook*, 59 N. Y. 517; *McGovern* v. *Central Vermont R. R. Co.*, 123 id. 280, 288; *Eastland* v. *Clarke*, 165 id. 420, 429.) The foreman in this case directed the work in the three aft hatches; the men took their orders from him and applied to him for tackle and other appliances used in their work; it was he who gave the orders to close the hatches. He was not a fellow-servant but was the *alter ego* of the defendant. The plaintiff made a *prima facie* case.

Whether the plaintiff, placed in the situation that he was by the closing of the hatch, and failing to get any response to his outcries, was chargeable with contributory negligence in going forward in the manner he did was clearly a question of fact for the jury. The plaintiff did not assume the risk. " It is now the settled·law of this State that the risks which a servant assumes are either such as are incident to his employment, after the master has discharged his duty of reasonable care to prevent them, or such as are quite as open and obvious to the servant as the master." (*Eastland* v. *Clarke, supra,* 427.) The plaintiff was not employed to work in the ship in the darkness. The risk of falling into the open hatch in the daytime, when engaged in the work, he assumed. But the risk of falling into the hatch, when all light had been cut off by the master's negligent act, he did not assume. It follows that the judgment will have to be reversed and a new trial granted.

Involved in this case are questions of great importance which have not been determined by our Court of Appeals and are presented for the first time to this court on this appeal. They were suggested ·in the .opening of counsel at the trial, but as the case was tried on the theory of common-law liability and so disposed of by the trial justice, we have not considered these questions in disposing of the case before us. As, however, we have ordered a new trial, and these questions have been presented by the counsel for the plaintiff, we feel it incumbent on us to give them careful consideration in advance of that trial, for the assistance of the trial court.

The plaintiff was a longshoreman employed in stowing a cargo upon a vessel engaged in foreign commerce, and sustained injuries upon the vessel when it was tied to a dock in the harbor of New York city. The Workmen's Compensation Law (§ 2, group 10, as amd. by Laws of 1916, chap. 622; since amd. by Laws of 1917, chap. 705, and re-enacted by Laws of 1918, chap. 249) classified longshore work, including the loading or unloading of cargoes or parts of cargoes, as among the hazardous employments covered by the act, and section 114 provided: "The provisions of this chapter shall apply to employers and employees engaged in intrastate, and also in interstate or foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the Congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, except that such employer and his employees working only in this State may, subject to the approval and in the manner provided by the Commission and so far as not forbidden by an act of Congress, accept and become bound by the provisions of this chapter in like manner and with the same effect in all respects as provided herein for other employers and their employees."

The defendant has complied with the requirements of the Workmen's Compensation Law of this State, and the Commission made an award of compensation for the plaintiff's injuries, which was being paid. The Supreme Court of the United States reversed *Matter of Jensen* v. *Southern Pacific Company* (215 N. Y. 514), holding that "The work of a stevedore in which the deceased was engaging is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction. * * * The Legislature exceeded its authority in attempting to extend the statute under consideration to conditions like those here disclosed. So applied, it conflicts with the Constitution and to that extent is invalid." (*Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 217.) The payment of the compensation by the defendant was stopped and this action was brought.

After the decision in the *Jensen* case Congress amended section 9 of the Judiciary Act of 1789 which had been continued by the United States Revised Statutes, sections 563 and 711, and by the Judicial Code, sections 24 and 256, and which vested in the Federal courts " exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction    *    *    * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it," by adding to subdivisions 3 of sections 24 and 256 of the Judicial Code, the additional saving clauses, " and to claimants the rights and remedies under the Workmen's Compensation Law of any State." (See 1 U. S. Stat. at Large, 76, 77, § 9; U. S. R. S. § 563, subd. 8; Id. § 711, subd. 3; Judicial Code [36 U. S. Stat. at Large, 1091], § 24, subd. 3, as amd. by 40 id. 395, chap. 97, § 1; Judicial Code [36 U. S. Stat. at Large, 1160, 1161], § 256, subd. 3, as amd. by 40 id. 395, chap. 97, § 2.) The Court of Appeals assumed that Congress acted within its powers and had confided to the States the power to enact and enforce Workmen's Compensation Acts in respect to injuries received in the course of maritime employment. (*Matter of Stewart* v. *Knickerbocker Ice Co.*, 226 N. Y. 302.) But on writ of error the United States Supreme Court reversed this case, holding the attempted amendment unconstitutional, as a delegation of the legislative power of Congress, and as defeating the purposes of the United States Constitution respecting the harmony and uniformity of the maritime law. (*Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149.) Therefore, although both of these cases were decided by a closely divided court, five to four, it may be accepted as settled that this plaintiff is not entitled to compensation under the Workmen's Compensation Law (*Matter of Doey* v. *Howland Co.*, 224 N. Y. 30) and is entitled to enforce whatever other remedy he has for the injuries sustained.

An award under the Workmen's Compensation Law is not made on the theory of a tort committed; compensation is given whether the injury was sustained with or without negligence; it is given upon the theory that the statute providing for the award is read into and becomes a part of the contract. (*Matter of Doey* v. *Howland Co.*, *supra*, 36.) The test, therefore, applied in the above cases was whether

the contract of employment was of a maritime nature, the true test being the subject-matter of the contract, the nature and character of the work to be done. But as the maritime contracts relate to a subject of exclusive Federal jurisdiction a State statute cannot be read into the contract.

In torts the rule is different. Jurisdiction depends solely on the place where the tort is committed. " ' Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance.' " (*Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52, 60.) In that case the person injured was a stevedore, and the court said: " The libellant was injured on a ship, lying in navigable waters, and while he was engaged in the performance of a maritime service. We entertain no doubt that the service in loading and stowing a ship's cargo is of this character. Upon its proper performance depend in large measure the safe carrying of the cargo and the safety of the ship itself; and it is a service absolutely necessary to enable the ship to discharge its maritime duty. Formerly the work was done by the ship's crew; but, owing to the exigencies of increasing commerce and the demand for rapidity and special skill, it has become a specialized service devolving upon a class ' as clearly identified with maritime affairs as are the mariners.' " (Id. 61.) In the instant case the plaintiff was injured because the care required by law was not taken to protect him from injury in his place of work. It was a tort for which a right of action was given at common law. The injury was sustained upon a vessel upon navigable waters, while the plaintiff was engaged in a maritime service. It was, therefore, a maritime tort, to redress which he could pursue his remedy, either *in rem* against the vessel, or *in personam* against the owner, in courts having maritime jurisdiction.

The Appellate Division of the Second Department has stated in a *per curiam* opinion that the State Supreme Court cannot try an action for injuries sustained by reason of a maritime tort; that it is a matter peculiarly within the jurisdiction of the admiralty courts. (*Johnson* v. *Standard Transportation Co.*, 188 App. Div. 934.) If this is a correct statement then the complaint in this case would have to be

dismissed. The statement was, however, *obiter dictum*. The action had been tried and submitted to the jury as a common-law action for damages for negligence. The jury rendered a verdict for the defendant. On appeal the plaintiff desired to have the case sent back to be tried on an entirely different theory. The court very properly affirmed the judgment because of the plaintiff's election of remedies.

The question of the liability of the master for an injury sustained on shipboard by reason of an insufficient appliance was before this court. (*Simpson* v. *Atlantic Coast Shipping Co., Inc.*, 191 App. Div. 844, 849.) The majority of the court assumed that the rule of damages would have been the same under the maritime law as that applied upon the trial and affirmed the judgment without determining the question. We can, therefore, consider the questions presented by this appeal unembarrassed by those cases.

Article 3, section 2, subdivision 1, of the Constitution of the United States extends the judicial power of the United States to all cases of admiralty and maritime jurisdiction. Article 1, section 8, subdivision 18, gives Congress the power to make all laws necessary for the execution of the powers granted. By section 9 of the Judiciary Act of 1789 the District Courts of the United States were given " exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." This grant was continued by the United States Revised Statutes, sections 563 and 711, and by the Judicial Code, sections 24 and 256. There have been numerous decisions construing this section. (*Waring* v. *Clarke*, 5 How. [U. S.] 441, 460; *The Moses Taylor*, 4 Wall. 411; *The Hine* v. *Trevor*, Id. 555; *The Belfast*, 7 id. 624; *Leon* v. *Galceran*, 11 id. 185; *Steamboat Co.* v. *Chase*, 16 id. 522; *The Lottawanna*, 21 id. 558; *The Glide*, 167 U. S. 606; *Chelentis* v. *Luckenbach S. S. Co.*, 247 id. 372.) These cases settle the law to be that actions *in rem*, whether arising under the general maritime law or to enforce liens given by the United States or local State statutes, must be prosecuted in admiralty in the United States courts, while actions *in personam*, arising out of maritime contracts or torts, may be brought in admiralty or on the law side of

the United States court or in a State court having an appropriate common-law remedy. It is the right sanctioned by the maritime law that may be enforced by any court having jurisdiction of the parties or the *res* by the common-law remedies appropriate thereto. This clause gives a right of election of a forum for the enforcement of the maritime right or to remedy the maritime wrong and thereby allows election of the procedure, whereby the matter may be decided. But the complaining party has no right of election to determine whether the defendant's liability shall be measured by common-law standards rather than by those of the maritime law. (*Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372, 383.) The maritime law as fixed and determined by the acts of Congress and the general maritime law as accepted by the Federal courts constitute part of the national law applicable to matters within the admiralty and maritime jurisdiction. The rights and liabilities arising out of maritime contracts or maritime torts, as recognized and declared by the maritime law, cannot be changed by State statute, nor by substitution of a common-law right or liability.

The instant case is an action for damage for personal injuries, for which there exists in this State a common-law remedy. Therefore, the action may be brought in our Supreme Court, the rules of practice, pleading and evidence of our courts apply, and the cause will be tried in conformity therewith; but the rules relating to contributory negligence, acts of fellow-servants, and the measure of recovery must be determined by the maritime law and not by the common law.

In maritime law contributory negligence of the injured party does not defeat a recovery but goes to a reduction, or more appropriately, an apportionment of the damage. The general rule of the common law exempting the master from liability for injury to a servant by a fellow-servant is not fully applied by the maritime law. And the rules applicable to the recovery, whether of full indemnity, or wages, maintenance and cure, must be taken into consideration, and the relief given according to the rules of maritime rather than common law.

If the case is retried it should be tried with reference to the rules of maritime law applicable to maritime torts.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

DOWLING, LAUGHLIN, MERRELL and GREENBAUM, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.