O'BRIEN v. LUCKENBACH S. S. CO., Inc., et al.

(Circuit Court of Appeals, Second Circuit. June 25, 1923.)

No. 284.

1. **Admiralty ⊙⟾21—Death ⊙⟾11—Damages for death not recoverable at common law nor under general maritime law.**

No right of action was given by the common law, nor exists under the general maritime law, to recover damages arising from the death of a human being caused by the negligence of another.

2. **Admiralty ⊙⟾21—Has jurisdiction of suit for wrongful death under state statute.**

A right of action for wrongful death, given by the laws of a state, may be enforced in a court of admiralty where it arose on navigable waters within the territorial jurisdiction of the state.

3. **Admiralty ⊙⟾21—State workmen's compensation statute does not apply to cases of death within the maritime jurisdiction.**

New York Workmen's Compensation Law, as construed by the Court of Appeals of the state, does not apply in cases within the maritime jurisdiction, and in such case a suit may be maintained in a court of admiralty against the employer for the death of an employee to enforce a right of action given by the wrongful death statute of the state.

4. **Admiralty ⊙⟾20—Has jurisdiction of suit for injury to stevedore employee.**

Admiralty courts have jurisdiction of a suit in personam by an employee of a stevedore against the employer to recover for injuries sustained through the negligence of the latter, while engaged in work, upon a vessel lying at the dock in navigable waters.

5. **Master and servant ⊙⟾120—Duty of employing stevedore to furnish safe place to work.**

It is the duty of an employing stevedore, as of any other employer, to exercise reasonable care to provide a reasonably safe working place for his employee, and the latter is entitled to act on the assumption that such duty has been performed, unless he knows that it has not been or the danger is so patent as to be readily discovered by him.

6. **Master and servant ⊙⟾217(7)—Employee under no duty to use care to discover dangers from master's negligence.**

An employee is under no duty to exercise care to discover dangers not ordinarily incident to the employment, but which result from the employer's negligence.

7. **Master and servant ⊙⟾212—Stevedore's employee held not to have assumed risk from employer's negligence in not securing hatch cover.**

Libelant's intestate, employed as a carpenter by respondent stevedore in fitting a ship for cargo, who was killed by the falling of a hatch cover on which he was required to work, through the negligence of respondent in placing the heavy timbers on the hatch cover and in failing to see that it was safely secured, *held* not to have assumed the risk.

8. **Courts ⊙⟾371(4)—Contributory negligence, where made a defense to an action for wrongful death by state statute giving the right of action, is defense in court of admiralty.**

Where the right to recover in an admiralty court for causing death rests on a statute of the state, all limitations on that right imposed by the statute must be given effect, and, where it makes contributory negligence a bar to recovery in a common-law action, it is a bar in that court.

9. **Master and servant ⊙⟾231(1)—Employee killed by falling of hatch cover held not chargeable with contributory negligence.**

An employee required by the employer to work on a hatch cover on a ship, and who was killed by the giving way of such cover, *held* not chargeable with contributory negligence.

⊙⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10. Death ☞75—Proof of contributory negligence must be convincing.**

In an action for wrongful death, where the burden of alleging and proving contributory negligence of deceased rests on the defendant, the proof in support of such defense must be more than usually convincing.

**11. Master and servant ☞203(1)—Risks assumed under New York law.**

Under the law of New York the risks which a servant assumes are either such as are incident to his employment, after the master has discharged his duty of reasonable care to prevent them, or such as are quite as open and obvious to the servant as to the master.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Mary T. O'Brien, as administratrix of Flurance M. O'Brien, deceased, against the Luckenbach Steamship Company, Inc., and the Union Transport Company, Inc. Decree for respondents, and libelant appeals. Reversed as to the Union Transport Company.

For opinion below, see 286 Fed. 301.

The Luckenbach Steamship Company is a corporation organized under the laws of the state of Delaware and is doing business in the Eastern district of New York, and at the times involved herein was the owner of the steamship Louis Luckenbach, hereinafter called the steamship.

On October 24, 1920, Flurance M. O'Brien was employed as a carpenter on the steamship by the Union Transport Company, Inc., hereinafter called the transport company, the latter being a corporation organized under the laws of the state of New York.

The libel alleges that while the said O'Brien was so employed on the steamship he was called upon in the regular course of his work to pass over and stand upon the cover of a certain hatch in said vessel, and that while standing upon the hatch cover it gave way without any negligence upon his part, and he was precipitated through the hatchway into the hold of the steamship and sustained injuries as a result of which he died.

It is alleged that he was injured and came to his death because the transport company did not take the care required by law to protect him while he was so employed, and because it did not use due diligence to see that he had a safe place in which to work, in that the hatch cover was defective and improperly secured.

It is alleged that the decedent left surviving him a widow, the libelant, and four children; and that letters of administration upon his estate have been duly granted to the libelant.

Damages are asked in the sum of $50,000.

The steamship company and the transport company put in separate answers in which they denied any negligence upon their part, or upon the part of any person for whom they were responsible. They alleged that any injury which the decedent sustained occurred in the ordinary course of his employment and occupation and resulted from the necessary risks of his employment and occupation and were inherent to the nature of the business in which he was employed or to his own fault and negligence.

The court below dismissed the libel as against both respondents.

William Austin Moore, of Brooklyn, N. Y. (George A. Green, of Brooklyn, N. Y., of counsel), for appellant.

Carter, Carter & Phillips, of New York City (Peter S. Carter and Robert Phillips, both of New York City, of counsel), for appellee Luckenbach Steamship Co.

J. Arthur Hilton, of New York City (Alfred T. Tompkins, of New York City, of counsel), for Union Transport Co., Inc.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This is a suit in admiralty to recover damages arising from the death of the libelant's husband, while employed in making repairs on a steamship while lying at a dock in the borough of Brooklyn, New York City.

The owners of the steamship had entered into a contract with the transport company so to fit the vessel that she could properly carry a cargo of grain. This necessitated the installation of wooden bulkheads in the hold of the ship, and the decedent was one of the carpenters employed by the transport company in doing this work. He began his work on Friday, October 25, 1920. The accident happened on Sunday, two days later.

The accident occurred at hatch No. 6. This hatch was 24 feet wide by 36 feet long. When the men arrived for work on the morning of the accident, hatch No. 6 was found covered with very heavy timbers stretched lengthwise across the hatch and piled up so as to obscure the hatch covers. These timbers are described as 6 by 8 and about 26 feet long. It appears there were "a great many" of these pieces of timber which are described as "very heavy timber," and as piled "across the covers." They had been placed in that position by the stevedores under the control of the transport company. The decedent was instructed by the boss in charge of the stevedores to stand upon the timbers and upon the hatch covers and measure the lumber and then mark each piece indicating where each was to be cut. Other men did the cutting and as the timbers were needed by the men down in the holds they were lowered with a winch. When the time came to lower the lumber, it was the decedent's duty to cross the timbers and the covers on the hatch in order to signal to the winchman. It was also his duty to warn the man below prior to the descent of the timbers. And in order to do this he had to approach the opening in the hatch through which the timber was lowered. At about 11 o'clock in the forenoon he approached the opening in hatch No. 6 apparently to warn those below that a load was about to descend, and stepped upon the hatch cover, when it dropped with him into the open hatch, and his body fell to the bottom of the hold, a distance of 75 feet, and he was almost instantly killed. A witness who saw the accident testified as follows:

"Q. Did you see this accident? A. Yes, sir.

"Q. Just tell us what you saw and how you saw it. A. Well, I think O'Brien was ready to hoist the lumber down, and he was working against the hatch cover, and hauled it down.

"Q. O'Brien was getting ready to lower it down? A. Yes, and he hollered down there to those fellows to look out below because he was going to hoist the lumber down, and he tried to give him a warning, and I saw the heavy cover slip underneath, and O'Brien fell in between.

"Q. Did you see him step on the hatch cover? A. Yes.

"Q. How did it look to you then? A. It looked to me all right, safe.

"Q. How far away were you standing? A. It was like from here to you on the deck of the ship.

"Q. About 10 feet? A. Yes."

It seems to be agreed that the hatch covers were constructed in the usual manner. They were supported by 7 strongbacks running athwart-

ships. Right after the accident happened an examination was made to discover how it happened, and it was discovered that one of the strongbacks was missing. Then they looked around the ship to see where it was and it was found on one side of the ship "covered up with ashes and a pile of lumber on top of it." The strongback which was out of place was the center one.

It is, however, beyond question that those in charge of this work should not have permitted these timbers to be placed upon the hatch. The chief officer of the steamship who was called by the respondents testified as follows:

"The hatch was covered with a lot of timber which showed that if the proper orders had been issued it would not have been placed on top of the hatch."

He testified that when he arrived at the vessel on the morning of the accident he found no one on board representing the steamship company. After stating that he found timber lying across hatch No. 6 which ought not to have been there and observing the men working on the hatch for about two minutes, he said he turned around to go down from the officers' deck to warn these men of their dangerous position in standing on the hatch, when he heard a crash. He testified:

"The men were standing on the hatch, which is a dangerous position. Turning around to warn these men of their dangerous position, I heard a crash. I immediately turned around quick and yelled, 'What happened?' I was informed that a man had fallen down the hold."

His testimony also discloses that the hatch cover itself was not in good condition. Asked as to hatch cover No. 6, his testimony was as follows:

"Q. It was not chewed or worn off, or out of shape in any way? A. Yes, sir; it was chewed and worn off in the corners; there were several hatch covers, which were unfit for use, in use at the time of the accident. However, being chief officer only about one day, it did not come under my jurisdiction to have the matter corrected. I joined the ship on Saturday afternoon, or morning, and on Sunday the accident happened. I noticed though that the hatch covers in some places were in very bad shape. Whether those near No. 6 were in bad shape I cannot remember.

"Q. How about the one that the man was on? A. That was chewed on the edges.

"Q. Do you mean due to wear, or was it a new break? A. It showed signs of having been in use for some time."

The winchman was asked as to the lumber which was placed on the hatch covers. He testified as follows:

"Q. Did you notice how the lumber was placed on top of the hatch covers? A. Across the hatch; they were laying a pile of lumber across the hatch, which had never been piled that way before since I am in the business."

There was testimony from other witnesses that they had never before seen lumber placed on the hatch covers and that it was usual to place it on the side of the ship.

[1] No right of action was given by the common law to recover damages arising from the death of a human being caused by the negligent act of another. Actio personalis moritur cum persona. Mobile Life Insurance Co. v. Brame, 95 U. S. 754, 24 L. Ed. 580. The same

doctrine exists in the general maritime law. The Supreme Court in The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358, held that in the absence of an act of Congress or a statute of a state giving a right of action therefor a suit in admiralty cannot be maintained in the courts of the United States to recover damages for the death of a human being on the high seas, or on waters navigable from the sea which is caused by negligence. As said in Butler v. Boston Steamship Co., 130 U. S. 555, 9 Sup. Ct. 612, 32 L. Ed. 1017, the maritime law of this country gives no such right.

[2] In The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264, the court sustained the right to sue in admiralty to recover damages for causing death, the action being based upon a Delaware statute giving a right of action for death caused by tort. The statute was held to be a valid exercise of the legislative power of the state and that it extended to the case of a citizen of that state wrongfully killed while on the high seas in a vessel belonging to a Delaware corporation by the negligence of another vessel also belonging to a Delaware corporation. This doctrine was reasserted in La Bourgogne, 210 U. S. 95, 138, 28 Sup. Ct. 664, 52 L. Ed. 973. In that case and in Western Fuel Company v. Garcia, 257 U. S. 233, 42 Sup. Ct. 89, 66 L. Ed. 210, it was held that where death upon navigable waters follows from a maritime tort the law of the state to which the vessel belongs gives a right of action for wrongful death if such death occurs on the high seas on board of the vessel the right of action will be enforced in an admiralty court of the United States.

Congress, in 1920, by the Act of March 30th, gives a right of action for damages resulting from death caused by wrongful act, neglect, or default occurring on the high seas beyond one maritime league from shore. The act provides that the action may be maintained against the vessel, person, or corporation, which would have been liable if death had not ensued. And it enacts that the fact that the decedent has been guilty of contributory negligence shall not bar recovery, but the court shall take into consideration the degree of negligence attributable to the decedent and reduce the recovery accordingly. But it expressly directs:

"That the provisions of any state statute giving or regulating rights of action or remedies for death shall not be affected by this act. Nor shall this act apply to the Great Lakes or to any waters within the territorial limits of any state, or to any navigable waters in the Panama Canal Zone." 41 St. c. 111, p. 537.

The passage of the act of 1920 leaves the matter therefore as it stood prior to its enactment as respects waters within the territorial limits of any state, and it is without application in states having a statute giving a right of action in death cases and making contributory negligence a bar to the maintenance of such an action. The state of New York has long had a statute giving a right of action for wrongfully causing the death of a human being. Such a statute was enacted in that state as early as 1847, which was a year prior to the enactment of Lord Campbell's Act in England, and it still has such a statute.

Section 1902 of the New York Code of Civil Procedure provides that—

"The executor or administrator * * * of the decedent who has left him or her surviving, the husband, wife or next of kin may maintain an action to recover damages for a wrongful act, neglect or default by which the decedent's death was caused, against a natural person, who, or a corporation, which would have been liable to an action in favor of the decedent, by reason thereof, if death had not ensued."

And section 841-b of the Code of Civil Procedure is as follows:

"On the trial of any action to recover damages for causing death, contributory negligence of the person killed shall be a defense to be pleaded and proven by the defendant."

It was, however, urged in this court by counsel for the transport company, but not in the court below, that the court is without jurisdiction to entertain this suit. This is based upon the contention that there was no statute in the state of New York in force at the time of the happening of the accident complained which permitted a recovery of damages by the representatives of a deceased employee against his employer for injuries resulting in death caused by an accident which arose out of and in the course of his employment. It is not contended that the provision in the New York Code of Civil Procedure, § 1902, heretofore quoted, authorizing the executor or administrator of a decedent to maintain an action to recover damages for a wrongful act, neglect, or default by which the decedent's death was caused, has been expressly repealed. But as we understand the argument it is that in the case of an employee injured in the course of his employment the liability of the employer is to be determined exclusively by the New York Workmen's Compensation Act; section 11 of that act providing that the liability of an employer as prescribed in the act shall be exclusive as far as the employees enumerated in the statute are concerned.

[3] The Workmen's Compensation Act of New York[1] is one in relation to compensation for injuries or death incurred by employees engaged in certain hazardous employments specified in section 2, art. 1. The hazardous employments specified in that section are enumerated in 47 groups, and of these two only need be referred to in this connection. They are as follows:

"Group 8. The operation, within or without the state, including repair of vessels, other than vessels of other states or countries used in interstate or foreign commerce, when operated or repaired by the company; marine wrecking.

"Group 9. Shipbuilding, including construction and repair in a shipyard or elsewhere, not included in group eight."

The words "construction and repair" of vessels comprehends the work in which the decedent, in the instant case, was employed when he met his death.

---

[1] See Chapter 67 of Consolidated Laws of New York, entitled "Workmen's Compensation Law" (chapter 816, Laws of 1913, as re-enacted by chapter 41, Laws of 1914), as amended by chapter 316, Laws of 1914; chapters 167, 168, 615, and 674, Laws of 1915; chapter 622, Laws of 1916; chapter 705, Laws of 1917; chapters 249, 633, 634, and 635, Laws of 1918; chapters 458, 498, and 629, Laws of 1919; chapters 527, 529, 530, 532, 533, 534, 536, 538, and 760, Laws of 1920; and chapters 60, 539, and 540, Laws of 1921.

Article 2, § 10, imposing liability upon the employer, does so "without regard to fault as a cause of such injury, except where the injury is occasioned by the willful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employee while on duty." Under the act contributory negligence and assumption of risk are not involved.

The New York Court of Appeals in an opinion recently handed down in John Danielson v. Morse Dry Dock & Repair Co., 1 Am. Maritime Cases, 675, has held that the act of that state is not exclusive; the case being within the maritime law. In that case, however, the action was brought to recover for injuries not resulting in death. The maritime law certainly afforded a remedy in such cases, and the admiralty court could not be deprived of its jurisdiction by a state statute. As the New York Court of Appeals very properly said:

"A workmen's compensation statute, not founded upon consent, but acting in invitum will not displace the rights and remedies established by the law of the sea."

But Danielson v. Morse Dry Dock & Repair Co. did not involve the exact question presented in the instant case. In that case, as we have pointed out, the action was not brought to recover for injuries resulting in death. In the present suit the action is for injuries resulting in death.

But the question now presented to us was passed upon in Warren v. Morse Dry Dock & Repair Co., 235 N. Y. 445, 139 N. E. 569, decided in the New York Court of Appeals on April 17, 1923. In that case the court unanimously affirmed a judgment of the Appellate Division which had affirmed a judgment of the Trial Term entered on a verdict of a jury in favor of the plaintiff. In that case the plaintiff sued as the administratrix of the estate of the decedent who met his death while working on the steamship Ardmore at the time undergoing repairs in the defendant's dry dock. Judge Cardozo, writing for the Court of Appeals, said:

"The law of maritime torts is what the maritime law declares it to be. To a limited extent, the maritime law permits its rules to be supplemented by local statutes, which it then adopts and enforces (Western Fuel Co. v. Garcia, supra). In such cases, a common-law remedy is reserved to the suitor in the common-law courts (Judicial Code, §§ 24, 256). The Workmen's Compensation Act does not lend itself to enforcement in the maritime courts. It does not lend itself to enforcement in the common-law courts according to common-law remedies. For these reasons it is inoperative to supplement or modify the maritime law (Southern Pacific Co. v. Jansen, supra, at p. 218). The result ensues, as to maritime torts, that the general right of action for injuries resulting in death remains what it was before the compensation act was passed. The legislature intended, in passing that act, not to abolish every remedy, but to substitute one remedy for another. It has no power, indeed, under the state Constitution (article I, § 18) to abrogate the right of action for injuries resulting in death, except by supplying to the dependents of employees a new form of compensation (Constitution art. I, § 19). It may change the groups or classes of dependents (Shanahan v. Monarch Engineering Co., 219 N. Y. 469). It may not say that those whom it classifies as dependents shall be left without a remedy. To the extent that the substitution of a new remedy is ineffective, the old one survives."

In view of this decision of the highest court of the state of New York, the reasoning of which seems to us conclusive, we hold that the United States District Court had jurisdiction, as this court has, to hear and determine the pending suit.

This brings us to a consideration of the case upon its merits and the principles upon which it must be determined.

[4] The general principle is, of course, conceded that the admiralty courts have jurisdiction of a suit in personam by an employee of a stevedore against the employer to recover for injuries sustained through the negligence of the latter while engaged in work upon a vessel lying at the dock in navigable waters. Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157.

[5] It is also elementary that an employing stevedore is required to furnish its employees with a safe place in which to perform their work. Port of New York Stevedoring Corporation v. Castagna (C. C. A.) 280 Fed. 618. It is the duty of the employing stevedore, as it is the duty of any employer, to exercise reasonable care to provide a reasonably safe working place for his employee, and the latter is entitled to act upon the assumption that that duty has been performed unless he knows that it has not been performed or the danger is so patent as to be readily discerned by him. As was said by Judge (now Mr. Justice) Van Devanter in United States Smelting Co. v. Parry, 166 Fed. 407, 410, 92 C. C. A. 159, 162:

"He [the employee] is not required to make an investigation or inspection to ascertain whether or not that duty has been performed, but only to have due regard for what he actually knows and for what is so patent as to be readily observed by him, by the reasonable use of his senses, having in view his age, intelligence, and experience"—citing numerous cases.

In that case the action was brought to recover for personal injuries sustained by a brick mason through the tipping of a plank in a temporary scaffold provided as a working place for him. It was held that the plaintiff was under no obligation to investigate to ascertain whether the scaffold was secure, although it would have taken but a moment to find out whether the planks upon which he stood were properly secured at the ends. The court declared:

"True, when he was sitting upon the end of the scaffold, he could have leaned over sufficiently to have looked thereunder, and, had he done so, could have seen that no foot lock was there; but he was not required to make even that effort at investigation or inspection, if, as was positively stated by him, nothing occurred to indicate that any of the planks was insecure. And, had he seen that no foot lock was there, he still would have been entitled, in the absence of any indication to the contrary, to assume that the planks had been made secure by nailing at the other end."

Judges Sanborn and Philips concurred.

[6] In a recent case in the Circuit Court of Appeals in the Fifth Circuit, Davis v. Scroggins, 284 Fed. 760, the above case is cited approvingly. In Davis v. Scroggins a car foreman in the yards of the defendant railroad company was inspecting cars standing alongside a platform and for convenience had to pass along the platform. In doing so he caught the heel of his right foot in a hole in the platform causing the injuries complained of. The hole had been open for more than a

month before the plaintiff was hurt, but he did not know of its existence. The court below refused to instruct that if the plaintiff knew of the hole, or in the exercise of ordinary care for his own safety should have known of it and the dangers arising therefrom, he assumed the risk. The appellate court held that it was not error to refuse to charge as requested and said that—

It "involved the assumption that, though the defendant was negligent in permitting the hole to remain in the platform, the plaintiff assumed the risk of injury by stepping in it, if, by exercising ordinary care for his own safety, he would have learned of the danger therefrom. That amounted to saying that the plaintiff was under a duty to exercise care to discover the danger. The charges exacted more of the plaintiff than the law requires. The employee is not obliged to exercise care to discover dangers not ordinarily incident to the employment, but which result from the employer's negligence. While an employee assumes the risks and dangers ordinarily incident to the employment in which he voluntarily engages, so far as these are not attributable to the negligence of the employer, or of those for whose conduct the employer is responsible, the employee has a right to assume that the employer has exercised proper care with respect to providing a reasonably safe place of work, and is not to be treated as assuming a risk that is attributable to the employer's negligence until he becomes aware of it, or it is so plainly observable that he must be presumed to have known of it."

In Imbrovek v. Hamburg American Steam Packer Co. (D. C.) 190 Fed. 229, the plaintiff was injured in the lower hold of a steamship while working for the stevedore. He was working under a hatch and was injured by the hatch falling into the hold with everything resting upon it. In that case the court said:

"It is easy to make a partially covered hatch absolutely safe. The cross-beams of the hatch have holes in the ends. There are corresponding holes in the hatch combings. Pins can be put through those holes. It takes about five minutes to put them in. When in place, an accident such as gave rise to this case cannot happen."

In that case the hatch did not give way as in the instant case by one stepping on it. It was occasioned by the load being lowered by a winch having caught under a crossbeam which was jerked out of its support causing it to fall into the hold. The case was affirmed in the Circuit Court of Appeals without opinion, 193 Fed. 1019, 113 C. C. A. 398, and in the Supreme Court in an opinion written by Mr. Justice Hughes, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157.

In Chesapeake & Ohio Railroad Co. v. Proffitt, 241 U. S. 462, 468, 36 Sup. Ct. 620, 622 (60 L. Ed. 1102), the court in a unanimous opinion said:

"To subject an employee, without warning, to unusual dangers not normally incident to the employment, is itself an act of negligence. And, as has been laid down in repeated decisions of this court, while an employee assumes the risks and dangers ordinarily incident to the employment in which he voluntarily engages, so far as these are not attributable to the negligence of the employer or of those for whose conduct the employer is responsible, the employee has a right to assume that the employer has exercised proper care with respect to providing a reasonably safe place of work (and this includes care in establishing a reasonably safe system or method of work) and is not to be treated as assuming a risk that is attributable to the employer's negligence until he becomes aware of it, or it is so plainly observable that he must be presumed to have known of it. The employee is not obliged to exer-

cise care to discover dangers not ordinarily incident to the employment, but which result from the employer's negligence."

[7] In the instant case the decedent was exposed to a danger not normally incident to his employment. The danger was occasioned by the negligence of his employer in allowing the timbers to be placed upon the hatch and in not having the hatch properly secured. The decedent had a right to assume that his employer had seen to it that the hatch was properly secured and was reasonably safe. He is not to be treated as assuming the risk of its insecurity until he becomes aware of it and it has not been satisfactorily shown that he was aware that it was unsecured, and it cannot be presumed that he was aware that it was insecure. He was under no obligation to ascertain whether it had been secured and could be stepped on in safety.

In cases of marine tort a court of admiralty ordinarily does not apply the common-law rule respecting contributory negligence and treat it as of necessity a bar to a recovery, but it will in a proper case apportion the damages. The Max Morris, 137 U. S. 1, 11 Sup. Ct. 29, 34 L. Ed. 586.

[8] However, where the right to sue in admiralty for causing death rests upon a state statute, and in the state which enacts the statute contributory negligence of the decedent is a bar to the action, the admiralty courts have applied tthe rule and dismissed the suit. This doctrine was announced by Judge Addison Brown in A. W. Thompson, 39 Fed. 115, in a case decided in the Southern district of New York in 1889. In that case an action was brought to recover damages for causing the death of the captain of a schooner killed in a collision between his ship and a steamer, both vessels being found in fault. Judge Brown denied any right of recovery and said:

"Any defense, therefore, that would bar recovery in the state courts, with reference to which the statute must be deemed enacted, must be held equally good in the admiralty. Besides this, the very language of the New York statute contains the proviso that the wrongful act, neglect, or default shall be 'such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof.' Laws N. Y. 1847, page 575, c. 450; 4 Edm. St. 526; 7 Edm. St. 591. As the action rests upon the statute it cannot lie except under the conditions which the statute imposes. The Edith, 94 U. S. 518. The well-settled law of this state at the time the statute was passed, and now, forbids a recovery of damages by a plaintiff chargeable with contributory negligence. In this case the master was at the wheel, and in command. He was personally chargeable with the negligence for which I have held the schooner liable. It therefore follows that the action for loss of life must be dismissed."

The same doctrine was again stated by Judge Brown in The City of Norwalk (D. C.) 55 Fed. 98. It was followed by Judge Hazel in Gretchmann v. Fix (D. C.) 189 Fed. 716. The Circuit Court of Appeals for the Sixth Circuit applied the same rule in Robinson v. Detroit & C. Steam Navigation Co., 73 Fed. 883, 20 C. C. A. 86, the opinion being written by Judge (now Chief Justice) Taft. And in Quinette v. Bisso, 136 Fed. 825, 69 C. C. A. 503, 5 L. R. A. (N. S.) 303, the Circuit Court of Appeals in the Fifth Circuit adhered to the same doctrine. And in Hughes on Admiralty, 443, 444, it is said that in such cases contributory negligence bars recovery.

In the present case as the right to maintain the action rests upon the statute of New York, and the statute makes contributory negligence a bar to a common-law action for causing death, we shall refer to the law of that state on this subject.

However it may be under the Workmen's Compensation Act, it is clear that under the New York law contributory negligence is a complete defense to an action at common law to recover damages for causing death. La Goy, Administrator, v. Director General of Railroads, 231 N. Y. 191, 131 N. E. 886; McKay v. Syracuse Rapid Transit Ry. Co., 208 N. Y. 359, 101 N. E. 885. It is an affirmative defense to be pleaded and proved by the defendant. The burden of establishing it rests upon the defendant. Delaware, Lackawanna Railroad Co. v. Rebmann (C. C. A.) 285 Fed. 317, 321; O'Hara v. Central R. Co. of New Jersey, 183 Fed. 739, 106 C. C. A. 177. It has been pleaded in this case, but we do not think it has been established.

[9] The question is whether the deceased at the time of the fatal accident was under all the circumstances of the case in the exercise of such due care and diligence as would be expected of a reasonably prudent and careful person under similar circumstances. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 428, 12 Sup. Ct. 679, 36 L. Ed. 485. Ordinarily the question of contributory negligence is one for the jury, but in a court of admiralty acting without a jury this question is for the court.

[10] In such a case as this it must not only be remembered that the defendant must prove the plaintiff's contributory negligence, but that in order to prove it the evidence must be more than usually convincing. Thus in Harrison v. N. Y. C. & H. R. R. Co., 195 N. Y. 86, 87 N. E. 802, one of the questions was whether the deceased was free from contributory negligence. Chief Judge Cullen, writing for a unanimous court, said:

"The deceased having been killed, less evidence was required from his personal representative to establish his freedom from negligence than would have been required from him had he survived and been able to testify."

The deceased in that case was a freight brakeman on defendant's road. His body was found under a railroad bridge beside the track, and the claim was that he had been struck by the bridge.

The same doctrine was asserted in Braun v. Buffalo General Electric Co., 200 N. Y. 484, 94 N. E. 206, 34 L. R. A. (N. S.) 1089, 140 Am. St. Rep. 645, 21 Ann. Cas. 370, where a carpenter working upon a building received a shock of electricity from electric light wires which caused his death; the theory of the defense being that he had taken hold of these wires for the purpose of passing over or under them.

[11] While the admiralty courts did not adopt the common-law doctrine of contributory negligence, they did apply the doctrine of assumption of risk as fully as it was applied in other branches of jurisprudence notwithstanding the rule as to division of damages in cases of concurrent damages. The Scandanavia (D. C.) 156 Fed. 403. A risk which the master has created by doing or permitting something to be done which ought not to have been done, or by omitting some precaution which in the exercise of ordinary care ought to have been taken,

cannot be regarded as one of the ordinary risks which the servant assumes. George v. Clark, 85 Fed. 608, 29 C. C. A. 374. In Maher v. Atlantic Stevedoring Co., Inc., 199 App. Div. 630, 192 N. Y. Supp. 255, the First Department of the Supreme Court of New York had before it an action by a longshoreman to recover damages for injuries caused by hatch covers falling upon him while he was stowing a cargo in the hold of a ship, which was lying in navigable waters. The court, after stating that the defendant was bound to furnish the plaintiff with a safe place in which to work, declared that the plaintiff assumed the risk of such dangers as were open and obvious in connection with the actual work of stowing the cargo within the hold of the vessel. The court in a unanimous opinion held that the longshoreman did not assume any risk occasioned by the failure of the master to furnish him with a safe place to work. And it applied the doctrine announced in Kennedy v. Cunard Steamship Co., Ltd., 197 App. Div. 459, 189 N. Y. Supp. 402, that—

"It is now the settled law of this state that the risks which a servant assumes are either such as are incident to his employment, after the master has discharged his duty of reasonable care to prevent them, or such as are quite as open and obvious to the servant as the master"—citing Eastland v. Clarke, 165 N. Y. 427, 59 N. E. 202, 70 L. R. A. 751.

In Eastland v. Clarke, 165 N. Y. 420, 427, 59 N. E. 202, 204 (70 L. R. A. 751), it is said:

"It is now the settled law of this state that the risks which a servant assumes are either such as are incident to his employment, after the master has discharged his duty of reasonable care to prevent them, or such as are quite as open and obvious to the servant as the master. * * * A servant does not assume risks which are not obvious, and are not known to him, but are or should be within the knowledge of the master."

In what we have already said it appears that in our opinion this record does not show that it was obvious to the deceased that the hatch was unsecured or unsafe or that he knew the fact. He could not, therefore, assume the risk.

The record is barren of any evidence that the steamship company was guilty of negligence or was in any way responsible for the death of the decedent. The court below properly held that no negligence was shown against it and dismissed the libel as to it.

The record convinces us that the transport company was negligent in permitting the timbers to be piled upon the hatch and in not seeing that the hatch was properly secured. Contributory negligence on the part of the plaintiff's intestate has not been proved. Neither has it been proved that he knew of the risk of the unsecured hatch and assumed it. His life expectancy in the state of New York, according to the United States Life Tables, 1910, was about 30 years, and according to the American Experience Table of Mortality, Laws of New York 1868, vol. 2, p. 1317, was about 31 years. He was earning at the time of his death a little more than $2,000 a year. That amount is probably less than he would have received had his life continued as wages paid now are in excess of those then paid. Taking into consideration all the circumstances disclosed by the record. and having in mind that his own expenses must be deducted from his estimated earn-

ings, we think that the sum of $16,500 with legal interest on the same from the date of his death on October 27, 1920, together with costs, is a proper award to be made to the libelant.

So much of the decree as dismissed the libel as against the steamship company is affirmed, with costs. So much of the decree as dismissed the libel as against the transport company is reversed, and it is ordered that a decree be entered in favor of the plaintiff, and against the transport company, in accordance with this opinion.

---

⬤➝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes