PETER MALEENY, Respondent, *v.* STANDARD SHIPBUILDING CORPORATION, Appellant.

Negligence — master and servant — Labor Law — maritime torts — scaffolds — when action to recover for injury to workman on ship may be brought either in federal or state courts — when common-law rule of master's liability is modified by provision of Labor Law requiring master to furnish safe scaffold — rule that contributory negligence bars recovery applicable in action for maritime tort brought in state court.

1. Under the Labor Law there is an absolute duty to furnish a safe scaffold and the master is liable as for negligence if the scaffold proves to be unsafe and the servant is injured. It is the common-law duty of a master to furnish his servant with a proper place to work and reasonably safe appliances and for his neglect of this duty he is liable for the resultant injury.

2. For the failure of the master to provide its servant, engaged in making repairs upon a ship in a shipyard, with a reasonably safe place to work and with proper appliances, an action may be brought either in the state or federal courts. The law to be applied in either tribunal will be the common law, which as applicable to maritime torts may be modified by state statutes to a certain extent and within reasonable limits.

3. The Labor Law applies to all employers furnishing scaffolds on buildings or structures within state territory. It is an exercise of the police power of the state for the preservation of the life and health of its citizens and is as applicable to work upon a ship in one of its harbors, performed by a resident master and servant, as upon any other structure, the common law of master and servant being modified and supplemented thereby within the limits permitted by the Federal Constitution. It is applicable, therefore, to an action by a resident of this state, employed by a domestic corporation in making repairs to a ship in a shipyard in this state, who was injured through the breaking of a plank in a scaffold upon which he was obliged to work.

4. The common-law remedy for maritime torts included the rule that contributory negligence barred recovery in an action by a servant against his master. In admiralty the comparative negligence rule applies but in the state courts the common-law rule of contributory negligence bars recovery. It should, therefore, have been charged in this case. (*Belden* v. *Chase*, 150 U. S. 674, 691, followed; *Chelentis*

v. *Luckenbach S. S. Co.*, 247 U. S. 372; *The Osceola*, 189 U. S. 158; *Carlisle Packing Co.* v. *Sandanger*, 259 U. S. 255, distinguished.)

*Maleeny* v. *Standard Shipbuilding Corp.*, 206 App. Div. 780, reversed.

(Argued November 23, 1923; decided December 27, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 7, 1923, affirming a judgment in favor of plaintiff entered upon a verdict.

*E. C. Sherwood* and *Clarence S. Zipp* for appellant. Since the accident occurred on board a ship lying in navigable waters and the plaintiff's employment was of a maritime nature, it was beyond the power of the legislature of the state of New York to impose on the defendant in connection with a maritime operation the onerous burden and stringent liability provided for by the New York Labor Law. (*Wilkes* v. *U. M. C. Corp.*, 199 App. Div. 788; *Dahl* v. *Robins D. D. & R. Co.*, 203 App. Div. 792; *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205; *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372; *The Osceola*, 189 U. S. 158; *Roebling's Sons Co. of New York* v. *Erickson*, 261 Fed. Rep. 986; *The Pouhasset*, 281 Fed. Rep. 874; *The City of Alexandria*, 17 Fed. Rep. 390; *State Industrial Comm.* v. *Nordenholt Corp.*, 259 U. S. 263; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149.) The trial court erred in instructing the jury upon the question of the effect upon the case of contributory negligence on the part of the plaintiff. (*Carter* v. *Brown*, 212 Fed. Rep. 393; *The Tourist*, 265 Fed. Rep. 700; *The General De Sonis*, 179 Fed. Rep. 123; *Morgan Lumber Co.* v. *West Kentucky Coal Co.*, 181 Fed. Rep. 271; *The Watson*, 128 Fed. Rep. 201; *Atlee* v. *Packet Co.*, 21 Wall. 389; *N. Y. H. Towboat Co.* v. *N. Y., L. E. & W. R. R. Co.*, 148 N. Y. 574; *Kennedy* v. *Cunard S. S. Co.*, 235 N. Y. 604.)

*Ralph G. Barclay, Jay S. Jones* and *Edward J. Fanning* for respondent. Section 240 of the Labor Law (L. 1921,

ch. 50), relating to the safety of scaffolds furnished by the master to the servant, applies to this action. (*Wilkes* v. *United Marine Contracting Co.*, 199 App. Div. 788; *Martin* v. *Herzog*, 228 N. Y. 164.) The trial court did not err in instructing the jury upon the question of the effect of any contributory negligence of the plaintiff. (Hughes on Admiralty [2d ed.], § 716; *The Tax Morris*, 137 U. S. 1; *Port of N. Y. S. Corp.* v. *Castagna*, 280 Fed. Rep. 618; *The Lackawanna*, 151 Fed. Rep. 499; *Johnson Co.* v. *Johanson*, 86 Fed. Rep. 886; *Carter* v. *Brown*, 212 Fed. Rep. 393; *Kennedy* v. *Cunard S. S. Co.*, 197 App. Div. 459; *Chelentis* v. *L. S. S. Co.*, 247 U. S. 372; *Belden* v. *Chase*, 150 U. S. 674; *New York Harbor Towboat Co.* v. *N. Y., L. E. & W. R. R. Co.*, 148 N. Y. 574.)

Crane, J. The Standard Shipbuilding Corporation, the defendant in this case, is a domestic corporation doing business in Richmond county, city and state of New York. The plaintiff was in the employ of the defendant working as a sheet iron helper. On the 6th day of October, 1921, he with other laborers was engaged in making certain repairs upon the ship *Buckeye State*, lying at the shipyards of the defendant at Rosebank, Staten Island. The particular work that he was engaged in doing was the repair of a metal ventilating shaft which was erected over the engine room in the hold of the ship and extended to the deck. The ventilator had been removed and was being replaced at the time of the accident. A scaffold had been erected by a crew of riggers in defendant's employ upon which the plaintiff was obliged to work. A plank of this scaffold broke and the plaintiff fell about twenty feet to the engine room below sustaining injuries for which he brought this action.

The court, in charging the jury, referred to the New York State Labor Law (Laws of 1921, chapter 50 [Cons. Laws, chap. 31]), which provides:

" Sec. 240.    Safe scaffolding required for use of employees.

" 1. A person employing or directing another to perform labor of any kind in the erection, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes and other mechanical contrivances which shall be so constructed, placed and operated as to give proper protection to a person so employed or directed."

Regarding this law the judge in his charge said:

" I said a moment ago something about the failure to observe a duty being negligence. There is a law in our state known as the Labor Law. Under section 18 of that law you will have to consider whether the defendant has observed the duty which that law casts upon it. Section 18 of the Labor Law prohibits an employer from furnishing to his employees a scaffold unsafe, unsuitable or improper and which is not so constructed as to give proper protection to the life and limb of the person employed to work thereon. Under this section there is a positive prohibition laid upon the master without exception on account of his negligence or the carelessness of his servants.

" If you find that the statute has been violated, and that the violation caused the accident, you may consider the statute with all the other facts proved in determining whether the defendant was guilty of negligence."

The charge was perhaps more favorable to the defendant than it was entitled to under the decisions of this court. We have held that there was an absolute duty . . . this Labor Law to furnish a safe scaffold, and that . . . . . er was liable as for negligence if the scaffold . . . . . . be unsafe and the servant were injured. The principal modification of the common law is that the master is made liable even if the scaffold be defectively

constructed through the negligence of fellow-servants, he, the master, having furnished proper material. (*Stewart v. Ferguson*, 164 N. Y. 553; *Caddy v. Interborough Rapid Transit Co.*, 195 N. Y. 415.)

The defendant, of course, does not complain upon appeal that this charge was more favorable to it than it should have been. It claims, however, that the Labor Law can have no application to the case whatever as the tort is a maritime tort, governed by the admiralty law. By section 9 of the Judiciary Act of 1789, which has been continued by the Judicial Code, sections 24 and 256, the District Courts are given " exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction * * * saving to suitors in all cases the right of a common law remedy where the common law is competent to give it."

For an accident such as happened to the plaintiff in this case he could bring his action in admiralty or in the courts of this state.

It is the common-law duty of a master to furnish his servant with a proper place to work and reasonably safe appliances; for his neglect of this duty he is liable for the resultant injury. (*Crispin v. Babbitt*, 81 N. Y. 516; *Pantzar v. Tilly Foster Iron Mining Co.*, 99 N. Y. 368.) This is also the law in admiralty, as applicable to those other than seamen. (*Atlantic Transport Co. v. Imbrovek*, 234 U. S. 52.)

Whether there be an admiralty law of master and servant separate and distinct from the common law, as it is known and applied by the states, need not be discussed, as it is neither important nor pertinent.

The fact is that admiralty does apply the common law of master and servant as it has been expounded by the common-law courts.

In *Leathers v. Blessing* (105 U. S. 626, 630) it was said: " Nor is the term ' tort,' when used in reference to admiralty jurisdiction, confined to wrongs or injuries

committed by direct force, but it includes wrongs suffered in consequence of the negligence or malfeasance of others, where the remedy at common law is by an action on the case."

And Justice HOLMES in *Knickerbocker Ice Co.* v. *Stewart* (253 U. S. 149, 167) says: " But somehow or other the ordinary common-law rules of liability as between master and servant have come to be applied to a considerable extent in the admiralty. If my explanation, that the source is the common law of the several states, is not accepted, I can only say, I do not know how, unless by the fiat of the judges."

As I read the cases I find no disagreement with this statement of Justice HOLMES, that the common law of the states has become the law of admiralty as it relates to master and servant. The only disagreement which I find is in determining what that common law is, or else in its application to situations strictly maritime. (*Workman* v. *N. Y. City, Mayor, etc.,* 179 U. S. 552; *Baltimore & Ohio Railroad Co.* v. *Baugh,* 149 U. S. 368; *Detroit* v. *Osborne,* 135 U. S. 492.)

We start, therefore, in our discussion with the concession that for the failure of the master to provide the servant with a reasonably safe place to work and with proper appliances, an action may be brought either in the state courts or in the United States District Courts. The law to be applied in either tribunal will be the common law; in admiralty it may be called the maritime law.

The question arises whether or not this common-law rule of masters' liability can in any way be modified by state statutes. Can a state statute, for instance, create a presumption of negligence from the happening of an accident, which I take it, would be simply modifying the rules of evidence, or shifting the burden of proof? Can ·it go a step further, as it evidently has done in our Labor Law, and say that employers do not fulfill their complete

duty to their servants by simply furnishing them with sufficient material to build a scaffold, but that they must see to it that the scaffold when built is safe. Broadly speaking, this wipes out the fellow-servant rule as to such a construction. Are these modifications proper and enforcible in the state courts when the accident is a maritime tort? We must remember, in this discussion, that we are dealing with a domestic corporation, and with a servant working for that corporation in the state of New York.

That the right of a common-law remedy which has been saved to suitors is not limited to either the substantive or remedial law, as it was in 1789, has heretofore been decided. Referring to the case of *Steamboat Company* v. *Chase* (16 Wall. 522) Mr. Justice BROWN in *Knapp, Stout & Co.* v. *McCaffrey* (177 U. S. 638, 646) said: "Defendant took the position that the saving clause must be limited to such causes of action as were known to the common law at the time of the passage of the judiciary act, and as the common law gave no remedy for negligence resulting in death, an action subsequently given by the statute was not a common-law remedy. The contention was held to be unsound."

In *The Hamilton* (207 U. S. 398, 404) we find this stated as the opinion of the Supreme Court: "The grant of admiralty jurisdiction, followed and construed by the Judiciary Act of 1789, ' saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it,' Rev. Stats. Sec. 563, cl. 8, leaves open the common-law jurisdiction of the state courts over torts committed at sea. This, we believe, always has been admitted. * * * And as the state courts in their decisions would follow their own notions about the law and might change them from time to time, it would be strange if the State might not make changes by its other mouthpiece, the legislature."

That the common law applicable to maritime torts

may be modified by state statutes to a certain extent and within reasonable limitations, seems to be unquestioned. The extent of the modification, however, has been much questioned of late, and has given rise to much uncertainty.

We have, upon the one hand, the *Jensen* case (*Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, 215) which holds that a state statute wiping out the master's common-law liability for injuries to his servant resulting from negligence, and substituting therefor the Workmen's Compensation Law, passed the limit of legality and was unconstitutional.

This case settled the state's power over maritime torts so far as the Workmen's Compensation Law was concerned, but made no attempt to fix the limits of that power. In fact, Mr. Justice McREYNOLDS, writing the opinion, so intimates, for he frankly states: "In view of these constitutional provisions and the federal act it would be difficult, if not impossible, to define with exactness just how far the general maritime law may be changed, modified, or affected by state legislation. That this may be done to some extent cannot be denied. A lien upon a vessel for repairs in her own port may be given by state statute, *The Lottawanna*, 21 Wall. 558, 579, 580; *The J. E. Rumbell*, 148 U. S. 1; pilotage fees fixed, *Cooley* v. *Board of Wardens*, 12 How. 299; *Ex parte McNeil*, 13 Wall, 236, 242; and the right given to recover in death cases, *The Hamilton*, 207 U. S. 398; *La Bourgogne*, 210 U. S. 95, 138. See *The City of Norwalk*, 55 Fed. Rep. 98, 106. Equally well established is the rule that state statutes may not contravene an applicable act of Congress or affect the general maritime law beyond certain limits. They cannot authorize proceedings *in rem* according to the course in admiralty, *The Moses Taylor*, 4 Wall. 411; *Steamboat Co.* v. *Chase*, 16 Wall. 522, 534; *The Glide*, 167 U. S. 606; nor create

17

liens for materials used in repairing a foreign ship, *The Roanoke*, 189 U. S. 185. See *Workman* v. *New York City*, 179 U. S. 552. And plainly, we think, no such legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations. This limitation, at the least, is essential to the effective operation of the fundamental purposes for which such law was incorporated into our national laws by the Constitution itself." (This was followed by *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149.)

On the other hand, in the *Garcia* case (*Western Fuel Co.* v. *Garcia*, 257 U. S. 233, 240) we find modifications of the common law by state statute adopted and applied in admiralty. While the previous cases of *Steamboat Co.* v. *Chase* (*supra*) and *Sherlock* v. *Alling* (93 U. S. 99) had sustained recoveries in a state court for negligence causing death in a maritime tort, the *Garcia* case determined for the first time that the same modification of the common law would be followed in admiralty. In the opinion we find it stated: "How far this rule of non-liability adopted and enforced by our admiralty courts in the absence of an applicable statute may be modified, changed or supplemented by state legislation has been the subject of consideration here but no complete solution of the question has been announced."

Referring to the *Jensen* and the *Stewart* cases the court continues: "We have recently discussed the theory under which the general maritime law became a part of our national law, and pointed out the inability of the states to change its general features so as to defeat uniformity — but the power of a state to make some modifications or supplements was affirmed."

At common law there was no recovery for death due to negligence. State statutes have modified this com-

mon-law rule· by giving a cause of action to the representatives of the deceased. This, in my opinion, is more than a mere change in remedy or a method of procedure. It is the giving of a substantial right. The reason it is recognized in admiralty is because it in no way interferes with the general scheme and scope of the admiralty law or the purposes which require that law to be uniform in all jurisdictions. It will not do to call these death statutes mere modifications of remedy as they are not such in fact. This is evidenced by the rule in the *Garcia* case that the time limited within which to bring the death action is a part of the right, and not the remedy and will be given force and effect in the admiralty courts. We find it there stated: " Time has been made of the essence of the right, and the right is lost if the time is disregarded. The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of the right." (Quoting from *The Harrisburg*, 119 U. S. 214.)

Again as evidencing that the death statutes deal with something more than the remedy, we find the admiralty courts following the state courts as to contributory negligence in such cases, and holding contrary to their customary rule, that as contributory negligence bars recovery in a state court, in an action to recover for death from negligence, so likewise will contributory negligence bar recovery in the admiralty court. (*City of Norwalk*, 55 Fed. Rep. 98, 102.)

Turning to this case, the *City of Norwalk*, cited with approval both in the *Jensen* case and the *Garcia* case, we find the limitation upon the state's legislative activity well expressed as, follows: " This view, however, does not exclude state legislation upon matters of merely local concern, which can be much better cared for under state authority, and which have always been thus cared for; nor does it exclude general legislation by the states,

applicable alike on land and water, in their exercise of the police power for the preservation of life and health; though incidentally affecting maritime affairs; provided that such legislation does not contravene any acts of Congress, nor work any prejudice to the characteristic features of the maritime law, nor interfere with its proper harmony and uniformity in its international and interstate relations. The long-established doctrine in the Supreme Court has been that in this field of ' border legislation,' state laws are valid until Congress interposes, and thereby excludes further state legislation."

Thus our Labor Law was not made especially applicable to ships or to the local waters, but applies to all employers furnishing scaffolds on buildings or structures within state territory. The defendant is a domestic corporation subject to the laws of the state of New York. The plaintiff was its servant and the accident happened here.

Can it not be claimed with much reason that this law passed in the interests of the laboring man for the erection of safe scaffolding was part of the police power of the state for the preservation of the life and health of its citizens, and was as applicable, therefore, to work upon a ship in the harbor, performed by resident master and servant, as upon any other structure? I think so, and for this reason believe that the Labor Law referred to has modified and supplemented the common law of master and servant within the limits permitted by the United States Constitution, and that it is applicable to such a marine tort as we have in this case.

Whether the admiralty courts will enforce this Labor Law, we, of course, cannot determine. Our power, however, to give force and effect to our own statutes, is not entirely dependent upon what they may do. (*Steamboat Co.* v. *Chase, supra; Sherlock* v. *Alling, supra.*) (See in point *Schwede* v. *Zenith Steamship Co.*, 216 Fed. Rep. 566; 244 U. S. 646.) Schwede was a seaman.

Another question has arisen in this case which, because

of the authorities in the United States Supreme Court has proved quite troublesome to the state courts. It is the question of contributory negligence as a bar to recovery. According to the common law contributory negligence of a plaintiff bars recovery; in admiralty it may merely reduce or apportion the damage. The court, in charging the jury in this case, said: " Here is a provision of the maritime law which is peculiar, and I will ask you to pay strict attention while I am charging you on it. Contributory negligence of the injured party may not defeat a recovery entirely. It goes to the cause of the injury. It may be sufficient to defeat the recovery. It may require a reduction or an apportionment of the damages.

" It is for you to say whether the acts of the plaintiff were such as to relieve the defendant from liability or partial liability; and if partial liability, to what extent. You will apply that rule. That means that you can apportion the negligence, if you find there is negligence on both parties; that you can apportion the negligence between the parties, and arrive at your verdict on an apportionment basis, if you so determine."

This is the rule applicable in the admiralty courts as decided in The Max Morris (137 U. S. 1, 15).

" We think," said the court in that case, " this rule is applicable to all like cases of marine tort founded upon negligence and prosecuted in admiralty, as in harmony with the rule for the division of damages in cases of collision. The mere fact of the negligence of the libellant as partly occasioning the injuries to him, when they also occurred partly through the negligence of the officers of the vessel, does not debar him entirely from a recovery."

Note that the rule is applied to cases prosecuted in admiralty. When a collision case was prosecuted in the state court a different rule was applied. (Belden v. Chase, 150 U. S. 674, 691.) Two vessels collided in the Hudson river. An action was brought in the New York

State Supreme Court to recover for the injuries sustained by one of the vessels. It was claimed that the plaintiff's ship was guilty of negligence, contributing to the accident. The common-law rule that contributory negligence bars recovery was held to be applicable. The court said:

" The doctrine in admiralty of an equal division of damages in the case of a collision between two vessels when both are in fault contributing to the collision, has long prevailed in England and this country. *The Max Morris,* 137 U. S. 1. But at common law the general rule is that if both vessels are culpable in respect of faults operating directly and immediately to produce the collision, neither can recover damages for injuries so caused. *Atlee* v. *Packet Co.,* 21 Wall. 389.

" In order to maintain his action, the plaintiff was obliged to establish the negligence of the defendant, and that such negligence was the sole cause of the injury, or, in other words, he could not recover, though defendant were negligent, if it appeared that his own negligence directly contributed to the result complained of."

It has been, therefore, distinctly held that in admiralty the comparative negligence rule applies, while in the state courts the common-law rule of contributory negligence bars recovery. The cases of *Johnson & Co.* v. *Johansen* (86 Fed. Rep. 886); *The Lackawanna* (151 Fed. Rep. 499); *Carter* v. *Brown* (212 Fed. Rep. 393), were actions in admiralty.

The Circuit Court of Appeals for the Second Circuit in *Port of New York Stevedoring Corporation* v. *Castagna* (280 Fed. Rep. 618) has applied the rule laid down in the *Max Morris Case (supra)* to an action at law. We feel that we should follow the rule of the Supreme Court of the United States in *Belden* v. *Chase,* until that court modifies or limits the authority. We do not find that it has ever been overruled. It was applied by this court in *N. Y. Harbor Tow-Boat Co.* v. *N. Y., L. E. & W. R. R. Co.* (148 N. Y. 574).

The Appellate Division also in *Kennedy* v. *Cunard Steamship Company, Limited* (197 App. Div. 459) held that the rules relating to contributory negligence must be determined by the maritime law and not by the common law. This followed, so its opinion states, the determination in *Chelentis* v. *Luckenbach Steamship Company, Inc.* (247 U. S. 372). The distinction, however, the Appellate Division failed to notice, between seamen and the ordinary land servant temporarily working on a ship, such as a stevedore, painter or mechanic. The law of the *Chelentis* case, *The Osceola* (189 U. S. 158) and *Carlisle Packing Co.* v. *Sandanger* (259 U. S. 255) was applied to the peculiar relationship existing between the members of the crew of a vessel and the owner.

The nature of a seaman's contract is such that unless the vessel be unseaworthy or there be a failure to supply and keep in order the proper appliances appurtenant to a ship, a seaman for an injury received is only entitled to his maintenance and cure and to his wages, at least so long as the voyage is continued. For disobedience to orders he may be locked up or put in irons. These rules of maritime law, applicable to seamen and members of the crew, and so restricted by these decisions, have no application to shore servants working on docked ships. The instances where such servants, like stevedores, have recovered damages for injuries received through negligence while working on ships are so numerous both in admiralty and in the state courts that citations are unnecessary.

The common-law remedy, which as above stated, was saved to suitors by the Federal Judicial Act, included this rule that contributory negligence barred recovery in an action by a servant against his master. We are inclined to follow this common-law rule not only because the United States Supreme Court has said that it is the law to be applied in state courts, but also because a contrary rule would work the following absurdity. It has been held that in actions to recover damages for

death caused by negligence, arising out of maritime torts, contributory negligence will bar recovery. (*City of Norwalk, supra; Quinette* v. *Bisso,* 136 Fed. Rep. 825, 838; *Groonstad* v. *Robins D. D. & R. Co.,* 236 N. Y. 52.) If, therefore, the comparative negligence rule of contributory negligence were to apply to actions in state courts for a maritime tort, we would have this situation: In an action brought against an employer by an employee for negligence arising out of a maritime tort, the comparative negligence rule would apply; if the employee were killed, his contributing negligence would absolutely bar recovery by his representatives.

No doubt the inconsistency may arise in the admiralty courts. This merely illustrates that if the law of contributing negligence as applied by the state courts and the admiralty courts differ, it is one of those differences which is apt to arise in all litigation where resort may be had to different tribunals. Law and its procedure is not an exact science. Given the same facts and circumstances, the same result cannot be guaranteed in law as it usually can be in natural science.

The inequalities which result to litigants at times in the application of different laws in different jurisdictions is not more serious than those differences in result which are due to human agencies, such as judges and jurors in attempting to apply a uniform law.

Believing, therefore, that the common-law rule of contributory negligence should have been charged in this case, we are obliged to reverse the judgments of the courts below and grant a new trial.

HISCOCK, Ch. J., HOGAN, CARDOZO and ANDREWS, JJ., concur; POUND and McLAUGHLIN, JJ., dissent.

Judgments reversed, etc.