GEORGE STONEY, Respondent, *v.* NORMAN STEVEDORING COMPANY, Appellant.

First Department, June 6, 1924.

Ships and shipping — action to recover for injuries suffered by plaintiff while working in hold of ship stowing cargo — injury caused by boxes that were being lowered striking plaintiff — failure of gangwayman to warn plaintiff was act of fellow-servant — contributory negligence should have been submitted to jury.

In an action by a longshoreman to recover damages for injuries suffered while he was working in the hold of a ship stowing cases of oil as they were lowered through the hatchway, which was based on the fact that a draft of cases was lowered without warning and struck him while he was under the hatchway, recovery cannot be had on the theory that it was negligence for the gangwayman to fail to give him warning that the cases were being lowered, since the gangwayman was a fellow-servant of the plaintiff and the employer is not liable for any negligence on his part.

It was the duty of the plaintiff to exercise care when the drafts were being lowered into the hold, and as he may have carelessly or negligently stepped underneath the draft which struck him, the question of contributory negligence was very material and the defendant was entitled to a charge that if the plaintiff's negligence contributed to the accident no recovery could be had.

APPEAL by the defendant, Norman Stevedoring Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 6th day of April, 1923, upon the verdict of a jury for $3,000, and also from an order entered in said clerk's office on the 13th day of April, 1923, denying the defendant's motion for a new trial made upon the minutes.

*E. C. Sherwood* [*H. H. Brown* of counsel], for the appellant.

*Edward A. Scott*, for the respondent.

MARTIN, J.:

Plaintiff, a longshoreman in the employ of the defendant, was injured while working in the hold of the steamship *Salto*, storing away cases of oil as they were lowered through the hatchway. He was one of eight men similarly employed. He was provided with a truck onto which each draft of cases was lowered, the truck then being pushed by him to the place where it was desired to stow away the cases in the hold of the ship.

The accident occurred between ten and eleven o'clock in the morning on April 21, 1919. The steamer was at a pier at the foot of Fifty-seventh street, Brooklyn. The defendant, a corporation engaged in the stevedoring business, was loading the vessel. Drafts of the cases were made up on a lighter alongside the steamer, and, after being hoisted to the ship's deck, were lowered through an open hatch into the hold.

The gangwayman, stationed on deck, signaled by means of a whistle to the winchman when a draft was to be raised from the lighter, and again when it was to be lowered into the hold. Plaintiff, however, heard no whistle before the descent of the draft that struck him.

These drafts consisted of eight cases of oil, each case weighing about seventy pounds. They were bound together with a sling, into which the hoist hook was fastened. They were raised from the lighter, swung over the side to the hatch and lowered into the hold. Banks, the gangway boss, was stationed over the hatchway, where he could see the men in the hold, the winchman and the lighter. He gave a signal to hoist when the draft was ready to be raised from the lighter, another when it was swung over the hatch, and a third when a truck was ready to receive it below.

Plaintiff had just received a draft on his truck and was in the act of pushing it away when a second draft was lowered, striking him in the back, inflicting injury to the lumbar muscles and nerves of his body.

The negligence alleged in the complaint is that the gangwayman carelessly gave directions to the man in charge of the winch or engine to lower the draft at a time when the plaintiff was not prepared to receive it.

Defendant contends that the negligence of Banks in lowering the cases upon plaintiff without warning was the act of a fellow-servant, for which defendant is not responsible; that in any event there was no proof of negligence on Banks' part; that plaintiff

assumed the risks of the employment; that it was error to charge that contributory negligence on plaintiff's part was not a bar to a recovery; and that the verdict was contrary to the charge, as it implied negligence by Banks in directing the draft to be lowered without a signal.

There was some testimony that the gangwayman, from his position on the deck, would at times give directions as to where the oil was to be stowed; but an oil inspector of the Tidewater Oil Company was down in the hold for that very purpose, and it was he who instructed the headers.

Accepting the testimony given by the plaintiff and his witnesses, he was injured through the negligence of the foreman during the performance of a detail of the work. There is no proof that he was given an unsafe place to work or improper appliances. The sole ground of recovery by plaintiff is that the foreman negligently lowered a draft into the hold of the ship, and that before lowering it he failed to give the plaintiff an opportunity to step to a place of safety. The appliances being sufficient in all respects, but one question remains, the alleged negligent act of the gangwayman.

In the case of *Ward* v. *Naughton* (74 App. Div. 68, 69, 70) the Appellate Division in the Second Department said: " The rule is well established in this State that the master is liable only for the neglect of some duty which was his to perform, and not for the negligence of a competent person by which a fellow-servant is injured. (*Cullen* v. *Norton*, 126 N. Y. 1, 6.) The trench was the place where the work was to go on, and the master was bound to make it a reasonably safe place for such work, considering its character and the necessarily dangerous nature of the work itself. For the manner in which the persons employed in the trench should themselves perform their work, no neglect of proper care in the selection of such workmen being shown, the master was not liable. (*Cullen* v. *Norton, supra.*) The work of blasting rock, under the circumstances disclosed by the evidence in this case, must of necessity be attended with dangers, and the defendants having provided a competent foreman and intrusted him with the details of the work, they cannot be held responsible for the neglect of the foreman to give an adequate warning to the plaintiff; the neglect, if there was neglect, was that of a fellow-servant, and not of a duty which the defendants owed to the plaintiff. The effort to divide up the duties of the defendants' foreman, and to hold that in superintending the drilling of the holes, in filling them with powder or dynamite, and in preparing the blast and discharging the same, he was to be regarded as a fellow-servant, while in the matter of giving warning he was to be regarded as the *alter ego* of the defendants, is a refinement of

the rules of negligence which has never yet been sanctioned by the appellate courts of this State, and we are not willing to be the pioneers in extending the doctrine of liability on the part of employers beyond the well-established limits fixed by the law. Within the rules applicable to this case the plaintiff and the others there engaged in the service of the defendants, including the foreman, were co-servants engaged in a common employment and the common master cannot be held responsible for injuries caused to any one of them through the carelessness of any of the others. (*Filbert* v. *D. & H. C. Co.*, 121 N. Y. 207, 212; *Perry* v. *Rogers*, 157 id. 251, 258; *Kimmer* v. *Weber*, 151 id. 417, 422.) ''

In *Vogel* v. *American Bridge Co.* (180 N. Y. 373, 376) the court said: '' Under the rule, as settled in this court in a number of cases, more or less similar to this in the cardinal facts, the servant, in the work upon which the master employs him, assumes as part of the ordinary risks attendant upon, or implied from the nature of, the work, such as arise from the possible negligence of competent fellow-servants. (*Quigley* v. *Levering*, 167 N. Y. 58.) ''

In *Scano* v. *Turner & Blanchard, Inc.* (209 App. Div. 41) it is said: '' In view of the uncontradicted evidence, we are unable to see how the master could be charged with neglect of duty. Proper and adequate appliances were furnished for the use of the employees in loading the ship, and if there was any failure of duty it was that of plaintiff's fellow-employees concerning a mere detail of the work for which plaintiff's co-employees were alone responsible. There is no claim made nor was any evidence given showing failure on the part of the defendant to provide a competent foreman to direct the plaintiff and his fellow-employees in the loading of the ship. (*McConnell* v. *Morse I. W. & D. D. Co.*, 187 N. Y. 341; *Madigan* v. *Oceanic Steam Navigation Co.*, 178 id. 242; *Depirro* v. *Robins Co.*, 210 id. 93; *Vogel* v. *American Bridge Co.*, 180 id. 373.)

Error is also predicated upon the charge of the court on the subject of contributory negligence. It is admitted for plaintiff that in view of the recent decision in the case of *Maleeny* v. *Standard Shipbuilding Corp.* (237 N. Y. 250), this charge was erroneous. But it is contended that the error was harmless because the question of contributory negligence did not enter into the case. With that contention we do not agree. The question of contributory negligence was very material. It was the duty of the plaintiff to exercise care when these drafts were being lowered into the hold. He may have carelessly or negligently stepped underneath the draft which struck him.

There are cases holding that under certain circumstances such a charge may be harmless. It was so held in *Kennedy* v. *Cunard*

*Steamship Co.* (235 N. Y. 604), because the question of contributory negligence did not enter into that case. But no such view may be taken where the question of contributory negligence is being litigated.

The defendant was entitled to a charge that, if plaintiff's negligence contributed to the accident, it would defeat a recovery.

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., MERRELL, FINCH and McAVOY, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.