TILLIE BOLES, as Administratrix, etc., of HENRY BOLES, Deceased, Substituted in Place of HENRY BOLES, Respondent, v. MUNSON STEAMSHIP LINE, INC., Appellant.

Second Department, April 15, 1932.

*A. H. F. Seeger* [*C. B. Dunham* with him on the brief], for the appellant.

*Walter L. Rathborne,* for the respondent.

CARSWELL, J. On April 28, 1927, Henry Boles was engaged as an employee of Charles F. Miner, a master stevedore, in discharging a cargo of the steamship *Southern Cross*, owned by defendant Munson Steamship Line, Inc. Boles was on a lighter attached to the *Southern Cross*, both boats being upon the waters of the port of New York. During the discharge of the cargo, Boles was injured. A jury has held that the steamship owner was negligent as to its part in the operation, and Boles had a verdict. After an appeal was taken he died, and the present plaintiff, his administratrix, was substituted.

The place where this accident occurred establishes that the tort

was a maritime tort. (*Industrial Comm.* v. *Nordenholt Corp.*, 259 U. S. 263, 273; *Nogueira* v. *N. Y., N. H. & H. R. R. Co.*, 281 id. 128; *Matter of Doey* v. *Howland Co.*, 224 N. Y. 30, 35; *Butler* v. *Robins Dry Dock & Repair Co.*, 240 id. 23; *Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52, 59.)

The court charged the rule of comparative negligence, to which the defendant excepted. The defendant requested a charge that the Jones Act did not apply, apparently referring to the doctrine of comparative negligence. The court refused the request and the defendant excepted. The Jones Act was not at any time explained to the jury. These exceptions present the only question with which we are concerned.

Both parties argue as if the doctrine of comparative negligence could only be properly charged if the Jones Act was applicable. The confusion thus indicated is understandable. Whether or not comparative negligence was properly charged in this case is not dependent necessarily upon the Jones Act. The misapprehension respecting it should be cleared up. It was enacted March 4, 1915, as section 20 of the Seamen's Act of 1915 (38 U. S. Stat. at Large, 1185, chap. 153; Barnes Fed. Code, § 7568), known as the La Follette Act. It contained no reference to the doctrine of comparative negligence; it merely freed a seaman from the burden of the fellow-servant rule in relation to his superior officer. It was amended and re-enacted on June 5, 1920, as section 33 of the Merchant Marine Act of 1920 (41 U. S. Stat. at Large, 1007, chap. 250; U. S. Code, tit. 46, § 688; Barnes Fed. Code Supp. § 7568), known as the Jones Act. The amendment incorporated, by reference, the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143; U. S. Code, tit. 45, § 51 *et seq.*) and accorded to seamen the benefits of that act. The Federal Employers' Liability Act had had included in it the rule of comparative negligence, borrowing it from admiralty law. It also provided a cause of action for wrongful death. (*Patrone* v. *Howlett*, 237 N. Y. 394.) The doctrine of comparative negligence did not find place in cases of maritime tort because of the Jones Act in its original or amended form. Before the Jones Act was enacted, the comparative negligence doctrine was recognized in maritime tort actions involving passengers or seamen, and particularly in actions brought by a seaman against his ship or master or brought by him against a ship for whom his master was under contract to do work of a maritime nature on a ship. (*The Max Morris*, 137 U. S. 1.)

The effect of the statutory development of the so-called " Jones Act " is given in *Panama R. R. Co.* v. *Johnson* (264 U. S. 375, 389).

It was there held that importing into admiralty law the Federal Employers' Liability Act, giving a seaman certain advantages apart from the comparative negligence rule which he already possessed in admiralty, was not an objectionable legislative encroachment upon maritime jurisdiction. The court stated (p. 388), referring to the Jones Act: "Rightly understood the statute neither withdraws injuries to seamen from the reach and operation of the maritime law, nor enables the seaman to do so. On the contrary, it brings into that law new rules drawn from another system and extends to injured seamen a right to invoke, at their election, either the relief accorded by the old rules or that provided by the new rules. The election is between alternatives accorded by the maritime law as modified, and not between that law and some non-maritime system."

We are not concerned with an action brought by an employee against his master.

We may assume without deciding that the Jones Act does not apply to an action for personal injuries as a consequence of a maritime tort where a seaman sues not his master but a ship for whom his master is under contract to do stevedoring. In such a case the seaman does not need to concern himself with the fellow-servant rule, relief from which the Jones Act accords to him. We may consider the tort herein, therefore, without reference to the Jones Act.

The proper application of the comparative negligence rule has been obscured by a body of somewhat fallacious dicta, and its clearing away is essential to a correct understanding of the true principle.

*Maleeny* v. *Standard Shipbuilding Corp.* (237 N. Y. 250) is said to require a holding that the trial court should have charged that contributory negligence would defeat a recovery, and not merely diminish damages. That decision is by a divided court. There, an employee brought an action against his master, a shipbuilding corporation. The employee was making repairs upon a ship when he suffered injury. He invoked a State statute or labor act with respect to scaffolding. It was held that contributory negligence was a complete bar. Confining it to the facts, the actual holding is that where a maritime employee in a maritime tort action invokes a State statute he must take that benefit with the limitations inhering in it, to wit, the State law's doctrine of contributory negligence as a bar to a recovery. Anything in the opinion other than this is dictum, and that dictum is buttressed by much that has been authoritatively declared to be unsound. Referring to

*Kennedy* v. *Cunard Steamship Co., Ltd.* (197 App. Div. 459; affd., 235 N. Y. 604), the court reasoned (p. 263) that the Appellate Division erred in following the doctrine of *Chelentis* v. *Luckenbach S. S. Co.* (247 U. S. 372, 383) that the complaining party has no right of election to determine whether the defendant's liability shall be measured by common-law standards rather than those of the maritime law. It was reasoned that there is a distinction between seamen and the ordinary land servant temporarily working on a ship, such as a stevedore, painter or mechanic. In the later case of *International Stevedoring Co.* v. *Haverty* (272 U. S. 50) it was held that a stevedore is a seaman. Therefore, this attempted distinguishing of the *Chelentis* case in the *Maleeny* case and its effect upon *Belden* v. *Chase* (150 U. S. 674) should not be accepted.

In the *Maleeny* case the court declined to accept the doctrine of *Port of New York Stevedoring Corporation* v. *Castagna* (280 Fed. 618, 624): " The right to recover irrespective of contributory negligence is a right, and not a matter of procedure, nor is it governed by the choice of the forum. In the case at bar, plaintiff has sought his remedy at common law to obtain redress arising out of a maritime tort. He entered the common-law court with the same right as he would have entered the admiralty court. That was the right to recover, irrespective of his own negligence, provided, of course, he could show the negligence of his employer, and this right of plaintiff sprang into existence because he suffered a maritime tort."

The *Maleeny* case dictum was followed and the foregoing doctrine disavowed in *Johnson* v. *United States Shipping Board Emergency F. Corp.* (24 F. [2d] 963). That decision, however, was reversed in *Johnson* v. *Fleet Corporation* (280 U. S. 320). The reversal was on the ground that the court was without jurisdiction. No such action at law may be entertained, in either the State or Federal courts, as against the Fleet Corporation, the exclusive remedy being in admiralty under the Suits in Admiralty Act. (See 41 U. S. Stat. at Large, 525, chap. 95; U. S. Code, tit. 46, § 741 *et seq.*)

The dictum we are asked to follow has become enmeshed in a tangle of error and embodied in a line of decisions with a bad record of ultimate fate. It must be re-examined and the true rule extracted and restated in the light of the later decisions of the United States Supreme Court, in their relation to fundamental admiralty principles.

The *Maleeny* case has no application herein. There the action was between an employee and his master in reference to a general maritime tort, in which, however, the employee sought to avail

himself of a State statute, to wit, the Labor Law. The invoking of this State statute carried into the case, under settled authority, the State rule that contributory negligence bars a recovery. Here, we have a stevedore working for a master stevedore, under contract with the ship to discharge a cargo. The plaintiff invokes no State statute against the ship, the owner of which was not his master. He seeks a recovery in a common-law forum for a maritime tort — the measure of liability to be determined by maritime law, which has, as one of its cardinal doctrines, the rule of uniformity.

The choice of a forum was with the plaintiff. He might sue in admiralty *in personam* or *in rem*, or on the law side in the Federal or State courts. It was early held, under article 3, section 2, subdivision 1, of the Federal Constitution (extending the judicial power to all cases of admiralty and maritime jurisdiction) that the Judiciary Act of 1789, with its saving clause, did not give a right to have a defendant's liability measured by common-law standards rather than by those of the maritime law. The clause in the Judiciary Act, so construed, reads: " Exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." (1 U. S. Stat. at Large, 76, 77, § 9.) This provision with modified phraseology has been continued by the United States Revised Statutes and the United States Judicial Code and is now embodied in the United States Code. (See U. S. R. S. § 563, subd. 8; Id. § 711, subd. 3; 36 U. S. Stat. at Large, 1091, § 24, subd. 3; Id. 1160, 1161, § 256, subd. 3; U. S. Code, tit. 28, § 41, subd. 3; Id. tit. 28, § 371, subd. 3.)

An authoritative discussion of prior holdings is in *Chelentis* v. *Luckenbach S. S. Co.* (247 U. S. 372, 381): "After reference to Article 1, § 8, and Article 3, § 2, of the Constitution, we declared in *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, 215, 216: ' Considering our former opinions, it must now be accepted as settled doctrine that in consequence of these provisions Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country. * * * And further, that in the absence of some controlling statute the general maritime law as accepted by the Federal courts constitutes part of our national law applicable to matters within the admiralty and maritime jurisdiction.' Concerning extent to which the general maritime law may be changed, modified or affected by State legislation this was said: ' No such legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its

international and interstate relations. This limitation, at the least, is essential to the effective operation of the fundamental purposes for which such law was incorporated into our national laws by the Constitution itself. These purposes are forcefully indicated in the foregoing quotations from *The Lottawanna* ' (21 Wall. 558, 575). Among such quotations is the following: ' One thing, however, is unquestionable; the Constitution must have referred to a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign States.' The work about which petitioner was engaged is maritime in its nature; his employment was a maritime contract; the injuries received were likewise maritime and the parties' rights and liabilities were matters clearly within the admiralty jurisdiction. *Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52, 59, 60. And unless in some way there was imposed upon the owners a liability different from that prescribed by maritime law, petitioner could properly demand only wages, maintenance and cure. Under the doctrine approved in *Southern Pacific Co.* v. *Jensen*, no State has power to abolish the well recognized maritime rule concerning measure of recovery and substitute therefor the full indemnity rule of the common law. Such a substitution would distinctly and definitely change or add to the settled maritime law; and it would be destructive of the ' uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign States.' "

The *Chelentis* case, therefore, holds that the clause above quoted in the Judiciary Act of 1789 allows a right sanctioned by maritime law to be enforced through appropriate common-law remedy, but does not give the plaintiff the privilege of having the defendant's liability measured by common-law standards instead of those prescribed by the maritime law.

Reason would require that the converse be held to be sound, to wit, that where no State statute is invoked a defendant may not have his liability to a plaintiff, in an action involving a maritime tort, measured by common-law standards instead of by the standards prescribed by the maritime law, involving as they do the doctrine of comparative negligence. That is, he may not invoke contributory negligence as a complete bar in such an action. Except in actions

against the Emergency Fleet Corporation, which is now known as the Merchant Fleet Corporation (*Johnson* v. *Fleet Corporation*, 280 U. S. 320), the jurisdiction to enforce liability in a maritime tort is in the State courts concurrently with the Federal courts. (*Engel* v. *Davenport*, 271 U. S. 33.)

In *Knickerbocker Ice Co.* v. *Stewart* (253 U. S. 149) the need for harmony and uniformity in maritime matters was further stressed in connection with the Judiciary Act of 1789, and its reservation language saved " to suitors  *  *  *  the right of a common law remedy." It was specifically held that the function of that clause was to preserve something from immediate interference — not to create. The *Chelentis* case is again quoted on uniformity, and the doctrine of *Southern Pacific Co.* v. *Jensen* (244 U. S. 205) is reiterated.

The determination to have uniformity in admiralty causes is so insistent that the Jones Act and its benefits to a seaman are given to a stevedore (as a seaman) while engaged in unloading a foreign vessel in American waters. (*Uravic* v. *Jarka Co.*, 282 U. S. 234.)

Admiralty law requires uniformity of standards in admeasuring liability in actions involving maritime torts no matter what the forum may be, whether it be in admiralty *in personam* or *in rem*, or on the law side of the Federal or State courts. This is the essential basis of the Federal decisions which sustain the right to recover for a death which occurs in the course of a maritime tort. In admiralty there was no cause of action for such a death, but the enforcement of liability was permitted in admiralty in connection with the invoking of a State statute. (*The Harrisburg*, 119 U. S. 199; *The Alaska*, 130 id. 201; *The Hamilton*, 207 id. 398.) When such a State statute was invoked, such local limitations upon the right to recover under such a statute were carried along with the benefit invoked; as, for instance, the rule that contributory negligence was a complete bar. There was no maritime law where a death was involved; hence, an enlargement of remedy was held not to offend the admiralty rule requiring uniformity. The benefit of the local statute, however, could be of avail only in connection with such limitations as may be contained in the local State laws. (*Groonstad* v. *Robins Dry Dock & R. Co.*, 236 N. Y. 52; *Patrone* v. *Howlett*, 237 id. 394.)

Where, however, no State statute is invoked, the local law is one with which a plaintiff or a defendant involved in a maritime tort has no concern. The measure of obligation is and should be the same whether the forum be an admiralty court or Federal or

State law court. (*Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372.)

It is said in the *Maleeny* case (p. 264), in giving a suppositional case, that an inconsistency would arise from accepting such a view. The assumed absurdity does not exist if the implications of the rule be stated accurately. In the assumed case, if it were a death case where the rule of contributory negligence would be a bar, the reason for this is that the plaintiff has seen fit to invoke a State statute with the limitation inherent in it with respect to contributory negligence. In the corresponding tort where no such State statute is invoked, no such limitation inheres and the doctrine of comparative negligence would properly be present, free from any suspicion of absurdity, because it is the basic doctrine of the maritime law upon which no limitation becomes encrusted since no State statute is invoked.

The soundness of the actual decision in the *Maleeny* case may not be questioned. Its dictum, however, does not survive an examination into the fundamental principles of admiralty law in respect to maritime torts. The actual decision is consistent with what is herein asserted.

If it be said that the *Chelentis Case* (247 U. S. 372) may not be given so broad a scope because of the decision in *Belden* v. *Chase* (150 U. S. 674, 691), the answer to such an assertion is complete. In *Cuba R. R. Co.* v. *Crosby* (222 U. S. 473, 478) Justice HOLMES pointed out that a specified doctrine relating to the case of a collision between two vessels was properly limited to that class of cases, and stated: " The language of Mr. Justice BRADLEY in *The Scotland*, 105 U. S. 24, with regard to the application of the *lex fori* to a case of collision between vessels belonging to different nations and so subject to no common law, *referred to that class of cases and no others*, and was used only in coming to the conclusion that foreign vessels might take advantage of our Limited Liability Act.∎ See also *The Chattahoochee*, 173 U. S. 540, 550. Other exceptional cases are referred to in *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347, such as those arising in regions having no law that civilized countries would recognize as adequate."

The *Belden* case involved a collision between two ships, and enforced the rule of contributory negligence as a bar, which rule had its origin in the *lex fori*, the common law of the State. The doctrine of that case should be confined to such collision cases

under the cited doctrine of the *Cuba R. R. Co.* case, in view of the later broader and more liberal rulings in the United States Supreme Court in maritime situations other than collision cases.

Another reason for so confining the *Belden* case is that its doctrine was stated without reference to the experience had in the modern development of the law respecting master and servant and the duties owing to the servants of masters engaged under contract with shipowners. That modern and more liberal doctrine finds expression in statutes such as the Jones Act and the later decisions thereunder. (*International Stevedoring Co.* v. *Haverty*, 272 U. S. 50; *Jamison* v. *Encarnacion*, 281 id. 635; *Uravic* v. *Jarka Co.*, 282 id. 234.)

The rule of comparative negligence has been charged time and again, without challenge, in cases that have gone through the State courts, where an employee, such as a stevedore, sued his master, a stevedore, and also the ship being loaded. In such cases, so far as the ship was concerned, the plaintiff would have no need to invoke the Jones Act to free himself from any burden involved in the fellow-servant doctrine. So far as his master was concerned, he would have need of the Jones Act and would invoke it. There could be no greater incongruity than to hold, in such a case, that if plaintiff, as against his master, properly invoked the Jones Act he could have the benefit of the doctrine of comparative negligence, but as against the ship he could not have the benefit of the comparative negligence rule even though that rule existed with reference to maritime torts before the Jones Act was enacted. Those cases to which I have referred have gone through the law side of the State courts.

In *Buzynski* v. *Luckenbach S. S. Co.* (277 U. S. 226) the action was *in personam* in admiralty by a stevedore working for an independent contractor engaged in loading cargo on a ship. He had judgment against the master stevedore and also against the shipowner. The only question that was allowed by certiorari and saved on appeal was whether or not the master stevedore could be held liable for the negligence of a fellow-servant of the plaintiff. The Circuit Court of Appeals absolved the master. (*Luckenbach S. S. Co.* v. *Buzynski*, 19 F. [2d] 871.) The Supreme Court of the United States reversed and held that the master could be held liable if it were found to be the fact that the injury was due to the negligence of such fellow-servant. In that case the doctrine of comparative negligence was assumed to be properly in the case both with respect to the ship and with respect to the master with whom the ship was under contract to load the cargo. In the case at bar the parties,

so far as the ship and the plaintiff are concerned, parallel the situation in the *Buzynski* case.

The confusion respecting the doctrine of comparative negligence has been generated by a blind following of dicta reinforced by reasoning later declared by the United States Supreme Court to be unsound. We may free ourselves by resort to the fundamentals of admiralty, which may be applied, with simplicity and uniformity, alike to actions *in personam* in admiralty and to actions on the law side in Federal and State courts, with plaintiff having the right to elect which forum he desires. (*Panama R. R. Co.* v. *Johnson*, 264 U. S. 375, 388.)

To summarize: When a plaintiff comes into a State court to enforce his remedy in a maritime tort for personal injuries, he and the defendant are entitled to the doctrine of comparative negligence just as they would get it in an action *in personam* in an admiralty court. The only time plaintiff may not have the benefit of this doctrine is when the plaintiff in a Federal or State court invokes a State statute, such as a death act or a labor law statute. He may invoke such statutes in enlargement of his admiralty remedy without offending the admiralty doctrine of uniformity. If, however, he invokes such local laws, he must take them subject to the limitations inherent in them, one being contributory negligence as a complete bar. This, applied to the case at bar, requires a holding that comparative negligence was properly charged, and nothing authoritative in the *Maleeny* case is to the contrary. The holding in that case conforms with the foregoing principle. In applying this principle to the case at bar there is no necessity to consider the Jones Act.

The doctrine stated will avoid the absurdity that would arise from holding that comparative negligence does not apply to a maritime tort where the action is brought by an employee against one with whom his master has a contract, to wit, a ship, although it would apply as against his master. This absurdity would appear in this wise: In a given instance, if the stevedore were working directly for the ship, the ship would be under a duty to furnish him with a safe place to work and with reasonably safe tackle wherewith to work. This duty is non-delegable. By recourse to the device of contracting out the loading operation, the burden of this non-delegable duty, in which inheres the doctrine of comparative negligence (under the Jones Act and apart from it), would have been successfully shifted and that which has been declared to be non-delegable would have been delegated, in substance and fact, if contributory negligence were held to be a bar in an action against the ship. That is, although a ship violated

its duty, contributory negligence would absolve it from the consequences, although in a corresponding action against the stevedore employer no such result would ensue. Adherence to the admiralty doctrine of uniformity prevents this inconsistency.

The judgment should be affirmed, with costs.

Present — LAZANSKY, P. J., YOUNG, CARSWELL, TOMPKINS and DAVIS, JJ.

Judgment unanimously affirmed, with costs.